74 So.2d 164

TRAHAN et al.

v.

POLICE JURY OF JEFFERSON PARISH.

No. 41830.

July 2, 1954.

Rehearing Denied July 26, 1954.

William J. Guste, James M. Colomb, Jr., Roy F. Guste, New Orleans, Edward B. Dufreche, Conchatoula, Joseph M. Blache, Jr., Hammond, Duncan S. Kemp, Jr., Amite, for plaintiffs-appellants.

Frank H. Langridge, Gretna, Foley, Cox & Judell, Dudley C. Foley, Ellis Lancaster, Wright & Daly, Frank B. Ellis, Wisdom & Stone, John Minor Wisdom, Paul O. H. Pigman, New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiffs, five residents and taxpayers of the Parish of Tangipahoa, are appealing from the judgment of the District Court sustaining defendant's exception of no cause of action to their suit against it, the Police Jury of Jefferson Parish, seeking to have declared illegal, void and invalid a certain bond election held in Jefferson Parish on January 12, 1954, approving the issuance of bonds to finance

the construction of a causeway across Lake Pontchartrain; seeking also to enjoin the advertising and sale of the proposed bonds and to enjoin the defendant from proceeding with the contract entered into with the engineering firm of Palmer & Baker, Inc., relative to this causeway.

For cause of action, the petitioners allege (1) that the bond election was illegal, void and invalid because there was failure to comply with the requirements set forth in R.S. 39:501, et seq., the Bond Election Law;[1] (2) that the plan of financing the bonds is not feasible and is impossible, and the proposed action of the defendant Police Jury is a manifest and oppressive abuse of its authority, because (on information and belief) the causeway will cost in excess of $40 million, necessitating a minimum traffic flow of 10,000 vehicles daily (which plaintiffs claim is greater than the most optimistic estimates) before sufficient tolls will be received to pay, together with dedicated funds, for operation, maintenance, bond interest and principal; (3) that the contract with the engineers, Palmer & Baker, Inc., is illegal because that company is also to handle the traffic survey and laboratory tests in connection with the bridge, thus eliminating proper checks and safeguards; that their fees are exorbitant; and that the contract is actually two contracts, one for professional engineering service and the other for making surveys, construction of triangulation towers and soil testing, the latter being one for a public work exceeding $2,500 which cannot be let without advertising and awarding to the lowest bidder.

1. Specifically, the plaintiffs alleged that the election was illegal and invalid because (a) no ballot boxes or ballots were provided in accordance with LSA–R.S. 39:-504; (b) no provision was made for challenging votes and attaching the challenge to the voter's ballot as is provided in LSA–R.S. 39:510; (c) no ballot was used substantially in form provided in LSA–R.S. 39:511; (d) no provision was made for each voter's name to be written on his ballot or for immediately depositing said ballot in the ballot box, all in violation of LSA–R.S. 39:512; (e) the right was not reserved to each voter to so fold his ballot that it should not be known at the time of voting whether he voted for or against the proposition submitted, all in violation of LSA–R.S. 39:-512; (f) no provisions were made for the ballot boxes to be opened in the presence of bystanders and the ballots counted as is provided in LSA–R.S. 39:514; (g) no provisions were made for depositing the ballots, the registrar's list of voters, the numbered list of taxpayers voting, one duplicate talley sheet and one duplicate compiled statement in the ballot box, and for immediately sealing said ballot box and delivering same to the Police Jury as is provided in LSA–R.S. 39:514; (h) no provisions were made for the destruction of duplicate ballots as is provided in LSA–R.S. 39:514; (i) no provisions were made for the Police Jury in public session to open the ballot boxes, examine and count the ballots in number and amount as provided in LSA–R.S. 39:515.

The bond election under attack was held following a 1952 amendment to Article 6, Section 22, subsection (g) of the Constitution of Louisiana whereby the parishes of Jefferson and St. Tammany were authorized to jointly construct a causeway across Lake Pontchartrain connecting the two parishes, and to issue revenue bonds jointly for such purpose. The amendment provides that the causeway, to be known as "Greater New Orleans Expressway", is to be operated by said parishes "as a toll project with reasonable tolls being charged for its use but always sufficient in amount to provide adequate revenues to pay all costs of operation and maintenance of the Expressway and, together with the funds dedicated in this Sub-section (g), [to pay] the principal of and interest on" the said revenue bonds. The "funds dedicated in this subsection (g)" are the surplus monies remaining in State Highway Fund No. 2 [2] at the end of each fiscal year, which amounts are directed to be paid into a special Reserve Fund in the State Treasury, and all monies remaining in this Reserve Fund after use of the first $5 million by the State Department of Highways to construct approach roads to connect with the Expressway "shall be available exclusively for use by the Parishes of Jefferson and St. Tammany to supplement the amounts received as net tolls and revenues from the Expressway, to promptly pay the principal of and interest on said revenue bonds." Provision is also made for the said parishes to receive, out of existing monies in State Highway Fund No. 2, amounts up to an aggregate of $350,000, as needed, to defray costs of detailed engineering plans and specifications, and the cost of gathering and compiling data in connection with the project.

The attack on the legality of the bond election, in which voting machines were used, is based upon plaintiffs' contention that Act 218 of 1946 (now LSA–R.S. 33: 4251 et seq.) is controlling here as it authorizes cities, towns and other political subdivisions to issue revenue bonds; that according to the provisions of Section 8 of that Act (now LSA–R.S. 33:4258), the manner of calling and conducting such bond election "shall be governed by the provisions of" the Bond Election Law, which does not authorize the use of voting machines; that the 1946 Act, though adopted four years after the Voting Machine Law (Act 138 of 1942, as amended, now LSA–R.S. 18:1161 et seq.) itself makes no provision for the use of such machines; so that the procedure outlined in the Bond Election Law had to be followed under penalty of illegality of the election.

█ The provisions of Act 218 of 1946 obviously have no application to this case because (1) that Act (according to its

2. State Highway Fund No. 2, originally established by Act 18 of 1918 (E.S.), is composed of the proceeds of vehicular registration fees in six lakefront par-

ishes—St. Charles, St. John the Baptist, Tangipahoa, St. Tammany, Jefferson and Orleans.

title) authorizes cities, towns, villages and political subdivisions and taxing districts to issue bonds "under authority of Section 14, Article 14 of the Constitution, to construct, acquire, extend or improve revenue producing public utilities * * *," and is now found in the section of the LSA–Revised Statutes having to do with the subject of public utilities, LSA–R.S. 33:4251 et seq., and (2) the bonds in this case are specifically authorized by Article 6, § 22, subsection (g), as set forth above.

The Voting Machine Law, LSA–R.S. 18:1161–18:1196, makes mandatory the use of voting machines in parishes containing a municipal corporation of more than 150,-000, LSA–R.S. 18:1165, and provides that "Any other parish * * * may adopt the use of voting machines and be governed by this Chapter if the governing authorities thereof are authorized. to do so by vote of a majority of the qualified electors thereof at any special or general election", LSA–R.S. 18:1166. At a special election held on May 1, 1951, in Jefferson Parish, the Voting Machine Law was adopted for use in all general and special elections to be held thereafter in the Parish. The Legislature, in authorizing adoption of the Voting Machine Law by vote of the electors, clearly contemplated that its provisions would govern in instances of such adoption.

■ In the case of Woulfe v. Morrison, 212 La. 1032, 34 So.2d 251, involving an attack on the legality of a special taxpayer election because of the use of voting machines (the contention being that their use was confined to primary and general elections), this Court observed that under the statute authorizing issuance of the bonds, "No restriction is placed upon the city's right to choose whatever medium it feels is best for recording the vote cast in such an election," and held "it makes no difference, therefore, whether the city chooses to have the voter's choice marked on a ballot and dropped into a box or to have such choice registered and marked on the ballot as fixed in the voting machine." 212 La. at page 1053, 34 So.2d at page 258. The plaintiffs argue, however, that the case is inapplicable here because the bond election in the Woulfe case was not subject to the provisions of the Bond Election Law but of another statute, Act 4 of 1916, which, besides authorizing the issuance. of the bonds, declared the provisions of the act to be self-operative and ordered the City to carry the same into effect. This argument is without merit; the constitutional amendment authorizing issuance of the bonds in this case makes no mention of the manner in which the vote is to be recorded, and the voters of Jefferson Parish, upon electing to be governed by the Voting Machine Law, adopted voting machines as the medium for recording their ballots in an "Election," which, under the definition contained in the Voting Machine Law, "* * * means all elections, general

or special, of every kind or character, including municipal, parochial, state, and national primaries." LSA–R.S. 18:1161.

■ Nor is there merit in the unsupported allegations that the plan of financing the Expressway is not feasible and is impossible considering the flow of traffic, the cost of construction, the bond interest, the cost of financing, and the income from dedicated funds; these statements are not (as claimed by plaintiffs) facts which, for the purpose of the exception, must be considered to be true, but are merely conclusions based on conjecture. The constitutional amendment declares that "The power and authority of the Parishes of Jefferson and St. Tammany to jointly construct the Expressway and to issue revenue bonds jointly for such purpose is hereby expressly confirmed", those parishes having "contracted in accordance with existing laws to jointly finance, construct, operate and maintain" the project. Clearly, the Jefferson Parish Police Jury is fully authorized to proceed in this matter according to its discretion, and in the absence of fraud or a showing of clear abuse of authority (there being none in this case), there is no basis for the injunctive relief sought.

The same is true with respect to the alleged illegality of the contract with the consulting engineers, Palmer & Baker, Inc. Obviously, by adoption of the amendment, cognizance was taken of the fact that such

a project as the building of a causeway of this size from its very nature calls for the services of consulting engineers in preparation for the undertaking; and this is evidenced by the express provisions of the amendment wherein the State Treasurer is directed to set aside and advance to the Parishes of Jefferson and St. Tammany, as needed, amounts up to an aggregate of $350,000, "to be used by said Parishes for the purpose of defraying costs of detailed engineering plans and specifications and the obtaining, gathering and compiling of all data necessary thereto * *."

For the reasons assigned, the judgment appealed from is affirmed.