DOMENGEAUX, Judge.
This appeal concerns itself with a petition for Declaratory Judgment instituted by resident electors and taxpayers of Jefferson and Orleans Parishes wherein they seek interpretation of certain provisions of Article XIV, Section 47 of the Louisiana Constitution (The Domed Stadium Amendment) as same relate to actions taken or contemplated by the Commissioner of the defendant Louisiana Stadium and Exposition District.
By Act 556 of the 1966 regular session of the Louisiana Legislature, the resolution proposing the Domed Stadium Amendment was adopted, and after being voted upon by the electorate of the State on November 8, 1966, and carried by an overwhelming majority it became Section 47 of Article XIV of the Louisiana Constitution. This amendment authorized and empowered the defendant Louisiana Stadium and Exposi *116 tion District (District) to plan, finance, construct, develop, maintain and operate a domed stadium in the New Orleans area. Pursuant to its constitutional authority, the District, in February 1969, through its Board of Commissioners approved a plan of finance for the proposed domed stadium. Pursuant to this plan and under the provisions of the Amendment, the District enacted a resolution authorizing the issuance of bonds of the District (Article XIV, Section 47(F)), executed a lease of the stadium facilities to the State of Louisiana (Article XIV, Section 47(D)), and finally executed a contract agreement to manage and operate the facilities for the State (Article XIV, Section 47(F)). This plan and the various contractual agreements undertaken pursuant thereto were approved and declared legal and proper in litigation culminating in the opinion of the Louisiana Supreme Court in the case of Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362, and appealed sub nomine Schwegmann v. Louisiana Stadium and Exposition District, 396 U.S. 279, 90 S.Ct. 569, 24 L.Ed.2d 467, No. 748 on the Docket of the United States Supreme Court, October term of 1969, appeal dismissed January 12, 1970. Additionally, certain actions of the District were the subject of a petition for injunction filed in Federal Court entitled Watermeier et al. v. Louisiana Stadium and Exposition District, 308 F.Supp. 273, docket of the U. S. District Court for the Eastern District of Louisiana, which suit was dismissed by the Federal Court on January 8, 1970.
In Arata, supra, our Supreme Court explains in some detail the provisions of the Amendment, hence in the interest of brevity we will refrain from redundant explanation thereof and refer our readers to that case for enlightenment in that regard.
In these proceedings, plaintiffs contend that:
1.Since the District is not a true Body Politic, but a State Agency, it is in fact the same legal person as the State and as a consequence thereof, and under the doctrine of Confusion contained in the Louisiana Civil Code, the State may not lease to itself, hence the lease contract is null and void.
2. Subsection (P) of Section 47 of Article XIV of the Louisiana Constitution (The Amendment) prohibits the District from expending any proceeds of the hotel-motel occupancy tax, (said tax being authorized by subsection (M) for the purposes of acquiring land for a stadium site until the District has issued bonds.
3. Such purchase of land is improper if accomplished prior to the determination of the feasibility of the project including the feasibility of the sale of bonds to finance same.
4. The sale of a token amount of bonds in an amount insufficient to assure the reasonable completion of the project is vio-lative of the amendment.
5. Alternatively, if the lease is valid, defendant Commissioner being authorized to obligate the State for an unlimited expenditure of funds, is clothed with an improper delegation of power from the Louisiana Legislature.
In the court below, defendants filed Answer generally denying the allegations in plaintiffs’ petition and additionally averred that plaintiffs’ cause of action has prescribed under the provisions of subsection (L) of the Amendment, that plaintiffs are estopped from asserting in this lawsuit the same issues they raised in the Federal Court suit No. 69-2601 (supra) which has been dismissed, and that all issues raised herein have been decided by our Supreme Court in Arata, supra. Defendants also filed a Motion for Summary Judgment.
The matter was tried on the Motion for Summary Judgment, and the trial judge in well considered and succinct Reasons for Judgment, concluded that under the provisions of the Amendment all allegations made by plaintiffs herein were completely *117 and unequivocally disposed of by Arata, and he accordingly granted defendants Motion for Summary Judgment, and ordered plaintiffs’ suit dismissed at their cost.
Plaintiffs have appealed devolutively from the trial court judgment. They contend that the trial judge erred in his conclusions and in not allowing them to present evidence that, 1) the domed stadium project as presently conceived is not feasible because the bond market as it now exists would not allow the sale of bonds by the District because of the 6% limitation contained in the Amendment, and 2) that the proposed token bond issue ($16.5 million) is but an attempt to prevent the expiration of the hotel-motel tax.
OPINION
1. Plaintiffs-appellants claim that the State of Louisiana and the Louisiana Stadium and Exposition District are one and the same person. They claim that the necessary result of this purported identity is to render the District incapable of contracting with the State. In this regard we see that under (A) of the Amendment, the District * * * “shall be a body politic and corporate and political subdivision of the State of Louisiana” * * *, and in Arata, supra, the Supreme Court said, in referring to a debt by the State without the affirmative vote of two-thirds of each House of the Legislature:
“This argument is insupportable, for it fails to take into consideration that the lease in question was not executed upon legislative authority, but, to the contrary, is explicitly authorized by the Constitution — the paramount law itself, which declares in Paragraph (E) that the State has the right and authority to enter into the lease, ‘Any other provisions of the Constitution and la>ws of the State to the contrary notwithstanding and without compliance with any other constitutional or statutory provisions’ * * La. Const, art. 14 § 47(E). (Emphasis ad-ed.)
Article XIV, Section 47(D) of the Louisiana Constitution provides in pertinent part:
“The District shall have the power * * * to execute leases to the State, its agencies or subdivisions * *
The whole of Subsection (E), reads as follows:
“Any other provisions of the Constitution and laws of the State to the contrary notwithstanding and without compliance with any other constitutional or statutory provisions relative to leasing of public facilities the State of Louisiana or any of its various agencies, or any political subdivision thereof, or any combination of the foregoing shall have the right and authority to lease the aforesaid facilities of the District or any portion thereof and provide for the payment of the consideration therefor through the appropriation of funds or otherwise.”
There is no way in which the Constitutional Amendment could have provided clearer or more express sanction to the lease which the District executed with the State of Louisiana. Further, in Arata, the Supreme Court of Louisiana in holding the lease and other transactions entered into by the District to be legal and wholly within its power and authority granted by the Constitution said:
“These arguments fail to take into consideration that the amendment places no limitations upon the terms and conditions of the lease which it authorizes except the duration of the lease and the requirement of a fixed rental. Under the terms of paragraph (D) the District is authorized ‘to execute leases to the State’.” 225 So.2d at 365.
“Paragraph (E) again sets forth that the State ‘shall have the right and authority to lease the * * * facilities of the District’.” 225 So.2d at 366.
“The amendment is so designed that the legality of the plan is to be ascertained *118 almost entirely within its four corners.” 225 So.2d 367.
“It is only necessary to resort to other laws when it is necessary to define, explain or clarify the meaning of the words and terms used in Article XIV, Section 47. When other constitutional provisions are in direct opposition to the clear terms of Article XIV, Section 47, the latter is unaffected by them.” 225 So.2d at 368.
“As a separate corporate body and political subdivision of the State, the District is without any authority to bind or obligate the State in any manner.” 225 So. 2d at 369.
Arata made it clear that the State and the District were separate entities when the following language was used in referring to the full faith and credit argument made therein:
“To begin with, the State is not the issuing authority — the District is the issuer of the bonds. As a separate corporate body and political subdivision of the State, the District is without any authority to bind or obligate the State in any manner.” (Emphasis added.)
We readily conclude in view of the body of the Amendment and the unequivocal language of Arata, that the District is an autonomous body politic, a separate independent corporate body, a political subdivision of the State, and plaintiffs’ allegations of “confusion” are without legal foundation. Thus it is clear that the District has the express power to enter into a lease with the State of Louisiana.
2. Plaintiffs-appellants further urge that Subsection (P) of the Amendment prohibits the District from expending any proceeds of the hotel-motel occupancy tax for the purpose of acquiring land for a dome site until the District has issued bonds. Subsection (P) is purely and simply a provision to allow for the disposition of surplus funds of the District to the Parishes of Orleans and Jefferson, if any remain at the end of the District’s fiscal year. In no way can Subsection (P) be construed as a limitation or prohibition of the broad grants of authority and power granted by the Amendment to the District.
Subsection (C) states the purpose for which the District is created, and reads in part as follows:
“The purpose for which the District is created is to plan, finance, construct, develop, maintain and operate facilities to be located within the District to accommodate the holding of sports events, athletic contests and other events of public interest. * * *”
Subsection (D) of the Amendment which contains the general grants of authority and power which are vested in the District reads, in part, as follows:
“The District shall have the power * * * to acquire by expropriation, purchase, lease or otherwise, the land and any other property that may be necessary and appropriate to the execution of the purposes of the District.” La. Const. Art. XIV, Section 47(D).
The pertinent part of Subsection (M) reads as follows:
“In order to provide funds for the purposes of the District, the District is authorized and empowered to levy and collect a tax upon the occupancy of hotel rooms located within the District.”
This grant of power to acquire land by purchase is broad and unequivocal. There is no provision in the Amendment that limits in any way the District’s power to purchase land solely from the proceeds of any particular or distinct fund available to the District. Subsection (P) has but one purpose and that is to provide for the disposition of surplus funds remaining to the District at the end of any year. The second paragraph of Subsection (P), which plaintiffs-appellants claim acts as a limitation on the District’s broad and general power *119 to acquire land by purchase reads as follows:
“Notwithstanding the foregoing provisions of this paragraph (P), prior to the issuance of any bonds hereunder, any revenues of the District derived from any source whatsoever, including the hotel occupancy tax, may be used by the District for the payment of any expenses incurred in determining the feasibility of a facility or facilities and developing plans therefor, including engineering, architectural, legal and administrative costs and fees incidental thereto. Any revenues of the District remaining at the end of each fiscal year prior to the issuance of bonds and after the payment of such expenses, costs and fees, shall be considered as surplus and shall be distributed in the manner provided hereinabove.” (Emphasis supplied.) La.Const. Art. XIV § 47(P) (1921).
As can be readily seen by reference to Subsections (P) and (D), the provisions of the Amendment limiting the disposition of surplus funds can in no way be interpreted to act as a prohibition or limitation of the District’s express powers and authorities. To read Subsection (P) as the plaintiffs-appellants argue it should be read would be, in effect, to interpret Subsection (P) as an implied abrogation of Subsection (D), which provides the District’s authority and powers.
Reduced to its simplest terms, Subsection (D) is a grant of power to the District to purchase lands and the District may use any of the legal sources of funds at its disposal for this purpose.
It should be noted that this same principle of construction was recognized by the Louisiana Supreme Court in construing this same Amendment.
“Reference to Paragraph (E) immediately impresses the reader with one dominant idea. It is a constitutional grant of authority which cannot be modified, altered or impinged upon by any other constitutional or statutory provision. And though, under accepted principles of statutory interpretation, resort may be had to extrinsic sources to explain what is unclear, no other authority can modify what is clear and unambiguous in its text.” Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So. 2d 362, 371 (1969).
3. As a third proposition, plaintiffs-appellants contend that any purchase of land is improper if accomplished prior to the determination of the feasibility of the project including the feasibility of the sale of bonds to finance same.
It is the settled jurisprudence of this State that the feasibility of plans or programs of a public agency is not a question admitting of legal attack absent a showing of clear abuse of discretion or fraud. To admit such an attack is to give license to the Courts to substitute their judgment for the constitutionally ordained discretion vested in the administrative agency. The lower court correctly dismissed this attempt by plaintiffs-appellants. The Supreme Court of Louisiana had occasion to discuss this proposition in relation to the erection of the Lake Pontchartrain Causeway. The plan of the Greater New Orleans Expressway Commission to build a causeway over Lake Pontchartrain was attacked as being an unfeasible project. Chief Justice Fournet, speaking for an unanimous Court, said:
“Nor is there merit in the unsupported allegations that the plan of financing the Expressway is not feasible and is impossible considering the flow of traffic, the cost of construction, the bond interest, the cost of financing, and the income from dedicated funds; these statements are not (as claimed by plaintiffs) facts which, for the purpose of the exception, must be considered to be true, but are merely conclusions based on conjecture. The constitutional amendment declares that ‘The power and authority of the Parishes of Jefferson and St. Tammany *120 to jointly construct the Expressway and to issue revenue bonds jointly for such purpose is hereby expressly confirmed’, those parishes having ‘contracted in accordance with existing laws to jointly finance, construct, operate and maintain’ the project. Clearly, the Jefferson Parish Police Jury is fully authorized to proceed in this matter according to its discretion, and in the absence of fraud or a showing of clear abuse of authority (there being none in this case), there is no basis for the injunctive relief sought.” Trahan v. Police Jury of Jefferson Parish, 225 La. 920, 74 So.2d 164, 167 (1954)
Plaintiffs-appellants have argued that conditions in the present bond market make it impossible for the District to sell its bonds within the 6% interest limitation contained in the constitutional amendment creating the District. Absent an attempted sale by the District of its bonds in clear contravention of the terms and provisions of the Amendment there is no judicial controversy for the Court to decide. The District of course may not issue bonds except as they may be authorized by the Amendment, but until some official act has occurred, there can be no attack on a hypothetically illegal issue. It is an elementary principle of administrative and constitutional law that a hypothetical action cannot be the subject of judicial action.
For example, in Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964), the Supreme Court upheld the dismissal of a declaratory judgment action which sought to prevent the City of New Orleans from taking action that “might be initiated”. Speaking for the Court, Justice Sanders said, at page 11, in relation to hypothetical controversies:
“The petition, in our opinion, affirmatively discloses the absence of a justicia-ble controversy. A statute cannot be challenged in the abstract. As we have observed, the statute is permissive only. To render it operative requires implementation by the local governing authority, the City of New Orleans. That authority has taken no action to implement it, and whether or not it will ever do so is entirely discretionary. Under the circumstances, we cannot assume that it will act. Clearly, the present attack upon the constitutionality of the statute does not present a justiciable controversy. The circumstance that an injunction is also sought does not alter the result. The Court cannot entertain any action that does not involve a justiciable controversy.”
4. Finally, plaintiffs-appellants contend that the District’s plan to issue a mere $16.5 million in bonds as a first stage is vi-olative of the Amendment whereas the cost of the project is anticipated to be in excess of $93.5 million. In effect they are questioning the District’s judgment in electing to issue its bonds in series rather than in one group. Actually the Amendment anticipates precisely that, as is shown in Subsection (H) thereof which reads as follows :
“(H) If more than one series of bonds is issued hereunder payable from the revenues of any facility, priority of lien on such revenues shall depend on the time of delivery of the bonds, each series enjoying a lien prior and superior to that enjoyed by any series of bonds subsequently delivered, except that where provision is made in the proceedings authorizing any issue or series of bonds for the issuance of additional bonds in the future on a parity therewith pursuant to procedure or restrictions provided in such proceedings, additional bonds may be issued in the future on a parity with such issue or series in the manner so provided in such proceedings. As to any issue or series of bonds which may be authorized as a unit but delivered from time to time in blocks, the Board may in the proceedings authorizing the issuance of the bonds provide that all of the bonds of the series or issue shall be coequal as to lien regardless of the time of delivery.”
*121 The argument that this “token” anticipated issue with short maturity dates is merely designed to prevent the expiration of the hotel-motel tax (Subsection M) is speculative and hypothetical and cannot be deemed meritorious in view of the clear intent of the Amendment to issue bonds in series.
Furthermore, it seems to us that the District, in issuing bonds in series, aside from doing what it is legally entitled to do under the Amendment, is employing sound business practice in borrowing money only as it becomes necessary to do so, and not in advance of its needs, thereby eliminating the necessity of paying interest on money that lies dormant.
Concerning the alternative contention that the District is clothed with an improper delegation of power, we find that the rationale contained in Arata, supra, leads us to the inescapable conclusion that appellant’s averments in this regard are without merit.
The trial judge correctly disposed of this case by granting a summary judgment.
It is important to note that at no point in the proceeding below did the plaintiffs-appellants raise any issues of fact except those which involved hypothetical situations and, therefore, those facts could not have any legal probative force. Essentially, the plaintiffs-appellants have no cause of action. They simply disagree with the considered judgment of the District and its Commissioners, however, such a disagreement does not create an enforcible legal right. There would have been no materiality, substantiality or relevance to the trial court’s taking any testimony or receiving any evidence concerning the condition of the financial markets in which the District may seek to sell its bonds. Obviously the District is aware that Subsection (F) of the Amendment prohibits the issuance of bonds at rates of interest exceeding six per cent (6%) per annum. The plaintiff s-appellants, in the absence of any issue or attempted issue of the District’s bonds contrary to the provisions of the Amendment, have no enforcible legal right or cause of action.
Similarly, plaintiffs-appellants attempted to raise the wholly speculative and hypothetical situation in which the District might use its lands for purposes not contemplated by the Amendment. No Court can render, even under the broad powers of declaratory judgment, a decision in such a wholly speculative or hypothetical situation.
This Court has recently reaffirmed the basic proposition of the law of summary judgments that facts must be controlling of the legal issues involved to prevent the issuance of a summary judgment.
“To this extent it might be conceded that there are certain genuine issues of fact, but what is decisive in determining the correctness of the summary judgment is whether or not these are the material facts; i. e., those facts that have legal probative force as to a controlling issue.”
Roussel Pump & Electric Company v. Sanderson, 216 So.2d 650, 654 (La.App. 4th Cir., 1969)
See also Roloff v. Liberty Mutual Insurance Company, La., 191 So.2d 901 (La.App. 4th Cir., 1966) and Dowden v. Hartford Accident & Indemnity Company, 151 So.2d 697 (La.App. 3rd Cir., 1963).
In essence, the plaintiffs-appellants have asked the Court to alter the considered judgment of the duly constituted Stadium District, and as a matter of law, this does not give rise to an enforcible right.
For the foregoing reasons, the judgment of the Trial Court granting Summary Judgment and ordering plaintiffs’ suit dismissed is affirmed. Costs of this appeal to be assessed against plaintiffs-appellants.
Affirmed.