438 So.2d 664 (1983)
FAIRFIELD DEVELOPMENT COMPANY, Plaintiff-Appellant,
v.
Vessie L. JACKSON, Defendant-Appellee-Appellant.
Nos. 15593-CA, 15594-CA.
Court of Appeal of Louisiana, Second Circuit.
September 20, 1983.
Rehearing Denied October 20, 1983.
*665 Smitherman, Lunn & Chastain by W. James Hill, III, Shreveport, for plaintiff-appellant.
S.P. Davis, Shreveport, for defendant-appellee-appellant.
Before PRICE, HALL and SEXTON, JJ.
SEXTON, Judge.
Plaintiff sued defendant to obtain specific performance of defendant's obligation to assign and pledge certain security interests to plaintiff. Defendant filed a peremptory exception of no cause of action, and the trial court sustained the peremptory exception, dismissing plaintiff's claims. Plaintiff filed a second suit against defendant seeking payment of an amount owed by defendant under contract. Defendant filed a dilatory exception of prematurity, and the trial court sustained the dilatory exception, dismissing plaintiff's claim. Plaintiff has appealed the judgment rendered against it in both suits, and both of plaintiff's appeals have been consolidated herein. We affirm and amend the trial court's judgment in sustaining the peremptory exception of no cause of action in the first suit; we reverse the trial court's judgment in sustaining the dilatory exception of prematurity in the second suit.
Plaintiff in this cause is Fairfield Development Company (hereinafter referred to as Fairfield), a Louisiana partnership domiciled in Shreveport, Louisiana. Defendant herein is Vessie L. Jackson, a resident of Shreveport. Plaintiff and defendant entered into a contract on November 2, 1981. This contract defined the parties' legal relationship, and created the reciprocal obligations from which the suits treated in this appeal arose.
The contract entered into by the parties contemplated that Fairfield and Jackson would form two separate partnerships. The first of these partnerships was Northside Villa Limited Partnership, 50.1% of which was to be owned by Jackson, and 49.9% of which was to be owned by Fairfield. The second partnership, Bayou Galion *666 Limited Partnership, was to be identically constituted, with Jackson owning a 50.1% share, and Fairfield owning a 49.9% share. The purpose of both partnerships was the sponsorship and development of housing subdivisions: the Northside Villa Limited Partnership was to develop the Northside Villa housing project in Shreveport, and the Bayou Galion Limited Partnership was to develop the Bayou Galion housing project in Mer Rouge, Louisiana. In sum, plaintiff Fairfield and defendant Jackson were to form two separate partnerships, with each partnership designed to sponsor a separate development; defendant was to own a majority interest, and plaintiff a minority interest, in each of the partnerships.
The contract entered into by the parties acknowledged that the bulk of the financing needed for the two development projects would be provided by a loan from HUD. The contract provided that the balance of the needed financing not obtained from HUD would be provided by Fairfield under two distinct finance arrangements.
The contract provided, with respect to the first of these financing arrangements, that Fairfield would make loans of $10,000 and $45,000 to Jackson. Under the terms of the contract, these two loans were to be secured by the pledge to Fairfield of the assignments of Jackson's majority interest in both Northside Villa and Bayou Galion partnerships.
Under the second financing arrangement contained in the contract, Fairfield obligated itself to make indeterminate advances to the two partnerships for developmental costs exceeding the loan obtained from HUD. The contract provided that Jackson would be liable for his 50.1% share of these advances. The contract provided that Jackson syndicate and sell a sufficient portion of his interests in both partnerships to repay his 50.1% share of the advances made by Fairfield. The contract further mandated that Jackson sell sufficient additional partnership interests to repay the $10,000 and $45,000 loans made by Fairfield to Jackson. Under the terms of the contract, the proceeds of the syndication were to be deposited in a special escrow account. This escrow account was to be used to repay the loans and advances made by Fairfield, with Jackson entitled to any remaining balance.
Plaintiff Fairfield filed a suit for specific performance on September 20, 1982, alleging that Jackson had breached the security agreement contained in the contract, by failing to pledge assignments of his (Jackson's) interests in the two partnerships as security for the $45,000 and $10,000 loans. Defendant Jackson filed a peremptory exception of no cause of action, and in a judgment filed February 7, 1983, the trial court sustained defendant's peremptory exception and dismissed plaintiff's suit.
On December 6, 1982, plaintiff Fairfield filed a second suit against Jackson seeking $89,264.30Jackson's 50.1% share of the advances made by Fairfield for development costs. Jackson filed a dilatory exception of prematurity, and in a judgment filed February 11, 1983, the trial court sustained the dilatory exception, dismissing plaintiff's suit. Fairfield's appeals from the two judgments rendered against it will be separately treated in this opinion.

I.
Plaintiff's suit for specific performance of defendant's obligation to pledge assignments of his interests in both partnerships
In its petition for specific performance, plaintiff alleged that it had loaned $10,000 to Jackson, and that it had tendered a loan of $45,000 to Jackson which Jackson had refused. Plaintiff further alleged that while Jackson had pledged to Fairfield an assignment of his interest in Bayou Galion Limited Partnerships, he had refusedafter several oral and written demandsto pledge to Fairfield an assignment of his interest in Northside Villa Limited Partnership. Fairfield urged in its petition, as a legal conclusion, that Jackson was civilly obligated under the terms of their contract to pledge assignments of his interests in both Northside Villa and Bayou Galion limited *667 partnerships to secure the $10,000 and $45,000 loans made by Fairfield to Jackson. It is undisputed that plaintiff has repaid the $10,000 loan. Plaintiff therefore prayed that the court order Jackson to execute a pledge to Fairfield of an assignment of his interest in Northside Villa Limited Partnership.
In its petition, Fairfield cited a single provision of its contract with Jackson. Fairfield claimed that this provision contractually obligated Jackson to pledge to Fairfield an assignment of Jackson's interest in Northside Villa Limited Partnership. This provision of the contract, quoted in the petition, provided that:
FDC has loaned Jackson $10,000.00, which loan is represented by a sixty (60) day note dated October 30, 1981. If a firm commitment and financing is obtained for Northside Villa, and deemed adequate by both parties, FDC will loan Jackson an additional $45,000.00. The two above amounts will be secured by a note and mortgage on real property as well as the assignment of Jackson's interest in the Limited Partnerships as security.
The peremptory exception of no cause of action is appropriately sustained when, assuming the truth of plaintiff's allegations, plaintiff's petition has not stated a cause of action for which relief may be given under the applicable substantive law. Frain as Tutrix of Beason v. State Farm Insurance Co., 421 So.2d 1169 (La.App. 2d Cir.1982); Millette Enterprises, Inc. v. State Division of Administration, et al., 417 So.2d 6 (La.App. 1st Cir.1982). In adjudging the propriety of the peremptory exception of no cause of action, it is crucial to note that "[n]o evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action." LSA-C.C.P. Art. 931. Thus, the question of whether plaintiff has stated a cause of action is to be decided on the face of plaintiff's petition. Adserv Corp. v. Lincecum, 385 So.2d 432 (La.App. 1st Cir. 1980); Johnson v. Edmonston, 383 So.2d 1277 (La.App. 1st Cir.1980).
The obligation to provide security for a separate obligation is accessory in nature, while the obligation guaranteed by this security is considered principal. If the principal or secured obligation is satisfied, the accessory obligation to provide security for that principal obligation is by its very nature extinguished. An accessory obligation may not exist without the coexistence of the principal obligation to which it lends support. Therefore, the extinction of the principal obligation simultaneously extinguishes the accessory or security obligation. See LSA-C.C. Arts. 1771, 2205, 3035, 3076, 3284 and 3285; Louis Werner Saw Mill Co. v. White, 16 So.2d 666 (La.App. 2d Cir.1942), reversed on other grounds, 205 La. 242, 17 So.2d 264 (1944); Comment, Tilting Against Windmills: A Solidary Rejoinder, 41 La.L. Rev. 1279 (1981).
Applying this law to the facts alleged in plaintiff's petition, it is apparent that plaintiff has not stated a cause of action. Plaintiff relies on the above quoted contractual provision to establish Jackson's obligation to pledge an assignment of Jackson's interest in Northside Villa Limited Partnership. However, it is clear from this critical contractual language that this pledge was intended to secure only the $45,000 and $10,000 loans made by Fairfield to Jackson. This is clear insofar as the contract explicitly refers to these two loans, and then states immediately thereafter, in the next sentence of the contract, that "The two above amounts will be secured by ... assignments of Jackson's interest in limited partnerships as security."
Thus, under the express terms of the contract, the assignments of Jackson's interests in the limited partnerships were intended to secure only the two aforementioned loans of $45,000 and $10,000. The obligation to assign his partnerships interests to Fairfield was merely accessory to the principal obligation of repaying the forestated loans.
Plaintiff acknowledges the repayment of the $10,000 loan, and expressly states that Jackson refused the $45,000 loan. Thus, the *668 principal obligation to repay the loans was satisfied and extinguished, and under the codal scheme, the accessory obligation to provide security for the repayment of these loans was also thereby extinguished. Simply stated, the obligation to provide security for the repayment of the loans was extinguished when Jackson discharged his obligation to repay the loans themselves.
We therefore conclude that the trial court was correct in sustaining the peremptory exception of no cause of action. Defendant Jackson is not obligated to pledge to Fairfield an assignment of his interest in Northside Villa Limited Partnership to secure the repayment of a $10,000 loan and a $45,000 loan, for the simple reason that Jackson has previously discharged his obligation to repay these loans.
It should be noted that the trial court granted Fairfield a preliminary injunction during the pendency of this suit to prohibit Jackson from alienating or disposing of his interest in the Northside Villa Limited Partnership. The trial court thereafter dismissed Jackson's rule to dissolve the injunction after the granting of the order of appeal. Jackson appealed this action. However, the trial court's dismissal of this rule to dissolve the injunction is void because this action was taken by the trial court after an appeal was granted, and after the trial court was therefore divested of its jurisdiction. LSA-C.C.P. Art. 2088. Therefore, the trial court ruling setting aside the rule to dissolve the injunction was improper and is hereby vacated.
We affirm the trial court's judgment in sustaining the peremptory exception of no cause of action. However, we note plaintiff's appellate contention, contained in brief, that the contractual instrument quoted in its petition did not reflect the true contract or agreement reached by the parties. It is significant, in this respect, that a civil contract has a separate existence apart from the writing in which it is recorded. LSA-C.C. Art. 1762. We therefore amend the trial court's judgment to allow plaintiff 15 days from the finality of this decision to amend its petition to state a valid cause of action. See LSA-C.C.P. Art. 934.

II.
Plaintiff's suit to recover 50.1% of the advances made by it to finance the development of Northside Villa and Bayou Galion housing projects
On December 6, 1982, Fairfield filed suit against Jackson for $89,264.30, which amount represents Jackson's 50.1% share of the advances made by Fairfield for development costs. Jackson filed a dilatory exception of prematurity, and in a judgment filed February 11, 1983, the trial court sustained the dilatory exception, dismissing plaintiff's suit.
In analyzing the issue of prematurity, it is necessary to focus on other provisions of the same contract which constituted the basis for Fairfield's first suit against Jackson. The relevant provisions of this contract provide:
It is understood by both parties to this agreement that there will be development costs in excess of the HUD mortgage [which will be financed by Fairfield].... Fifty and one-tenth (50.1%) of this "shortfall" ... will be owed to [Fairfield] by Jackson at final endorsement of the HUD mortgages on the projects.
Prior to first occupancy of the apartments on the property, Jackson will sell partnership interests from his 50.1% ownership at least in the amount of $124,000.00
These proceeds [from the syndication sale] will be deposited in an escrow account at the Commercial National Bank.... The first $55,000.00 of which will be paid as it accumulates to [Fairfield] in repayment of the [$10,000 and $45,000 loans]. The balance of the [escrow] proceeds will accumulate until final endorsement of the HUD mortgage loan at which time will be known the exact balance owed by Jackson for his 50.1% of the [advances made by Fairfield]. This amount will be paid from the aforementioned escrow account. Should this *669 account be inadequate, Jackson will sell further partnership interests immediately to pay [Fairfield]. Should this account be in excess of Jackson's amount owed, this balance will be paid to Jackson.
It is clear, from the foregoing contractual provisions, that Fairfield has assumed the obligation of providing all financing needed for the two housing projects in excess of that obtained from HUD. Jackson, on the other hand, has obligated himself in the first instance to syndicate and sellprior to first occupancyenough shares in his partnership interests to repay the two loans made by Fairfield, and his 50.1% share of the advances made by Fairfield. The contract imposes upon Jackson the additional obligation of repaying his 50.1% share of the advances for development costs made by Fairfield, which repayment was stipulated to be due "at final endorsement of the HUD mortgages on the projects." Thus, the contract contains Fairfield's obligation to finance, and Jackson's dual obligation to syndicate a portion of his partnership interests and repay Fairfield's advances at a stipulated time.
Fairfield contends that Jackson has breached his obligation to syndicate prior to first occupancy of the housing units included in the two developments. This contention is supported by exhibits which indicate that first occupancy occurred on November 8, 1982, and by correspondence which clearly implies that Jackson has continually refused to syndicate any portion of his interests in the limited partnerships, despite formal demands. On the basis of this alleged breach of their contract, Fairfield seeks judgment for Jackson's 50.1% share of the cost advances made by Fairfield.
Jackson resists plaintiff's demands in his exception of prematurity contending that, under the terms of the contract, Jackson's payment of his 50.1% share of Fairfield's advances is not due and demandable until "final endorsement of the HUD mortgages on the project."
Thus, the sole issue presented by this second portion of the consolidated appeal, is whether Fairfield's suit for repayment of 50.1% of its advances is premature.
A suit is premature if it is brought before the right to enforce it has accrued. LSA-C.C.P. Art. 423. Prematurity is determined by the facts existing at the time suit is filed. Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2d Cir.1982). "On the trial of the dilatory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition...." LSA-C.C.P. Art. 930. In short, evidence may be considered in assessing prematurity. Superior Oil Co. v. Humble Oil and Refining Co., 257 La. 207, 241 So.2d 911, per curiam on rehearing, 241 So.2d 914 (La.1970). We are thus able to consider the documentary evidence filed herein which indicates that first occupancy in Northside Villa Apartments occurred on November 8, 1982, and that Jackson had not, prior to this time, syndicated his interests in the limited partnerships. The exhibits further show that plaintiff has made several formal demands on Jackson to execute his syndication obligation. We note also, from the filings submitted, that final endorsement of the HUD mortgages had not occurred.
In analyzing the prematurity of the instant suit, it is crucial to characterize the obligations upon which this suit is predicated. It is evident in the first instance that Jackson's obligation to syndicate prior to first occupancy is an obligation to do. See LSA-C.C. Arts. 1761, 1905. Moreover, Jackson's obligation to repay Fairfield's loans and advanceswhich obligation accrues at the final endorsement of the HUD mortgagesis apparently an obligation to give. LSA-C.C. Art. 1906.
More crucial to the resolution of this appeal is the characterization of these obligations as separate and distinct, or as sub-parts of the same obligation. Based on the codal definitions provided by Civil Code Articles 2108 and 2109, we conclude that Jackson's obligations to syndicate and repay Fairfield are components of, and together comprise, a single obligation. In civilian *670 terms, these dual obligations constitute a single indivisible obligation.
Article 2108 states that "[a]n obligation is divisible or indivisible, according as it has for its object, either a thing which, in its delivery or a fact which, in its execution, is or is not susceptible of division, either material or intellectual." Article 2109 states that:
"The obligation is indivisible, though the thing or the fact which is the object of it, be by its nature divisible, if the light, in which it is considered in the obligation, does not admit of its being partially executed."
Applying these codal definitions to the civil duties owed herein, it is clear that Jackson's obligations to syndicate and repay Fairfield together constitute but a single, indivisible obligation. Partial execution was not intended by the parties. Clearly, it was never envisioned that one obligation would be executed without the other. The obligation to syndicate would have no meaning absent the obligation of repayment, since syndication was solely a means to finance repayment. Moreover, the obligation of repayment might prove impossible for the obligor Jackson without prior syndication. In function, in purpose, and in the intent of the parties, these obligations of syndication and repayment are so inextricably related and intertwined that they can be viewed in no other light than as complementary duties constituting a single obligation. It is axiomatic that in the parties' intentions, the obligation to syndicate existed only to accumulate an escrow account and implement the obligation of repayment. In short, the obligations to syndicate and repay were constituent parts of the same indivisible obligation.
Given our conclusion that Jackson's obligations to syndicate and repay are constituent components of a single indivisible obligation, it is next necessary to apply the codal rules governing the maturity and accrual of actions to this single multi-predicate obligation.
Article 1933 provides that when a passive breach has occurred, damages are dueand the action has accrued"from the time that the debtor has been put in default." A passive breach occurs where an obligor allows a contractually stipulated term to expire without discharging his obligation. LSA-C.C. Art. 1931. Article 2052 provides that "[w]hat is due only at a certain time, can not be demanded before the expiration of the intermediate time ...." See also, LSA-C.C.P. Art. 423.
It might be contended that the application of these codal principles leads to conflicting conclusions about whether this action is premature. It might be contended, for example, that under Article 1933 the action for breach of the syndication obligation had accrued and that under Article 2052 the action for repayment was premature. Thus, it could be urged that Jackson passively violated the syndication obligation by failing to syndicate during the prescribed time, and that under Article 1933, an action for this passive breach accrued when Fairfield put Jackson in default by formal demand. It could be further urged that the action for repayment of the advances was premature until endorsement of the HUD mortgage, under Article 2052, since "[w]hat is due only at a certain time, can not be demanded before the expiration of the intermediate time ...." However, we reject that approach because of our conclusion herein that Jackson's two-fold duties constitute a single indivisible obligation, and because it would be illogical to say that the same obligation was both ripe and premature.
The better view is that this single obligation is not premature, but is ripe. This result is reached when Code Articles 1933 and 2052 are contextually interpreted to yield a harmonious effect. While Article 2052 establishes the general principle that a creditor may not accelerate at will a debtor's debt, we do not believe the codal redactors intended to extend the protection of this article to obligors who had breached a sub-obligation integrally related to other components of an indivisible obligation. It is our belief, in short, that Article 2052 was not intended to extend its protection to *671 obligors who had not complied in good faith with the terms of their contract. In our view, Article 2052 was meant to protect only debtors that had substantially complied with their contractual obligation. The rule of Article 2052 must be read in conjunction with the rule of Article 1933 that an action against an obligor who passively violates his obligation accrues upon formal demand or "putting in default."
We thereby conclude under Articles 1932 and 2052, that where an obligor breaches a sub-obligation which is an integral component of a larger indivisible obligation, an action thereby accrues for enforcement of the entire indivisible obligationeven though the time stipulated for the performance of other sub-obligations comprised in the indivisible obligation has not expired. In short, breach of an integral part of the indivisible obligation constitutes breach of the entire indivisible obligation.
We note that the result which is mandated herein by the Civil Code is also supported by jurisprudential doctrine. Louisiana courts have adopted the doctrine of anticipatory breach. Marek v. McHardy, 234 La. 841, 101 So.2d 689 (1958); Lawton v. Louisiana Pacific Corp., 344 So.2d 1129 (La.App. 3d Cir.1977). The principle thesis of this doctrine is that an obligee has a cause of action when an obligor's acts or omissions reduce his ability to execute, or signify his intent to repudiate, a contractual obligation. Comment, The Doctrine of Anticipatory Breach of Contract, 20 La.L.Rev. 119 (1959). It is clear, under this doctrine, that plaintiff Fairfield has a cause of action for anticipatory breach: Jackson's failure to syndicate indicates his unwillingness or inability to repay Fairfield.

DECREE
The trial court's judgment sustaining the peremptory exception of no cause of action and dismissing plaintiff's claims in Suit No. 15,593 is affirmed. However, this judgment is amended to allow plaintiff Fairfield fifteen days from the finality of this decision to amend its petition to state a valid cause of action. The trial court's order dismissing Jackson's rule to dissolve the preliminary injunction previously granted against him is vacated. This cause is remanded for further proceedings not inconsistent herewith. The trial court's judgment sustaining the dilatory exception of prematurity in Suit No. 15,594 is reversed, and this cause is remanded for further proceedings not inconsistent herewith. The costs of this consolidated appeal are to be equally borne by plaintiff Fairfield and defendant Jackson.
AFFIRMED, AMENDED and REMANDED in part; REVERSED and REMANDED in part.