512 So.2d 1165 (1987)
ST. CHARLES PARISH SCHOOL BOARD
v.
GAF CORPORATION, et al.
No. 85-CC-2334.
Supreme Court of Louisiana.
January 12, 1987.
Rehearing Granted March 12, 1987.
On Rehearing August 7, 1987.
*1166 Herschel L. Abbott, Jr., David Israel, Carl D. Rosenblum, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-applicant.
James B. Irwin, Gus A. Fritchie, III, Montgomery, Barnett, Brown & Read, Robert N. Ryan, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, William O. Bonin, Landry, Watkins & Bonin, New Iberia, J. Michael Johnson, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, James I. Regan, Covington, Gerard G. Metzger, Metairie, for plaintiff-respondent.
LEMMON, Justice.[*]
This action by the owner of a school building, seeking to recover damages caused by alleged defects in the construction of the building, was filed more than three years after the acceptance of the construction. We granted certiorari to review the trial court's overruling of an exception of prescription filed by the general contractor based on La.R.S. 38:2189.[1] We now conclude that the three-year limitation established by La.R.S. 38:2189 for the filing of an action against a contractor in connection with the construction of a public building is a prescriptive period which is subject to suspension during the period in which the cause of action for construction defects is not known or reasonably knowable to the state agency or board which owns the building.
In September, 1973, plaintiff School Board entered into a contract for the construction of a school building with defendant general contractor. On August 6, 1975, the Board recorded its acceptance of the building.
Sometime after the Board began to use the building, leaks developed in the roof. The Board initially attributed the leaks to normal problems with a flat roof. When leaks continued to occur, however, the Board hired a consultant in 1984 to investigate the cause of the persistent problem. Upon being advised that the entire roof needed to be replaced on account of design and workmanship defects, the Board filed this suit on November 26, 1984 against the general contractor, as well as the architects, certain subcontractors and the manufacturers of certain building materials.
The general contractor filed an exception of prescription on the basis of La.R.S. 38:2189, which provides:
"Any action against the contractor on the contract or on the bond or against the contractor and/or surety on the bond furnished by the contractor, all in connection with the construction, alteration or repair of any public works let by the state or any of its agencies, boards or sub-divisions shall prescribe three years from the registry or acceptance of such work or notice of default of the contractor *1167 unless otherwise limited in this said chapter."
The trial court overruled the exception. On application for supervisory writs under La.C.C.P. Art. 2201, the intermediate court declined to review the interlocutory judgment, reasoning that La.R.S. 38:2189 is a prescriptive statute which applies only to apparent defects, as contrasted with La. C.C. Art. 2762 and La.R.S. 9:2772, which are peremptive statutes generally affording the owner of a building ten years to discover and sue for hidden construction defects.[2] We then granted certiorari. 481 So.2d 1341 (La.1986).
The threshold inquiry is the effect of La.R.S. 38:2189, which was enacted in 1962, upon the preexisting La.C.C. Art. 2762.
In Orleans Parish School Board v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (1971), this court concluded that La.C.C. Art. 2762 establishes a substantive right in favor of the owner of a building making the contractor and the architect responsible if the building falls to ruin, in whole or in part, within ten years on account of badness in workmanship. Because the construction of the building was completed before the 1962 enactment of La.R.S. 38:2189, this court held that the subsequently enacted statute, even if viewed as a statute of peremption, could not affect or impair the owner's vested substantive right against the contractor when the building fell to ruin on account of badness of workmanship within ten years of completion.
This court in Pittman characterized the ten-year period of La.C.C. Art. 2762, which was taken from Code Napoleon Article 1792 (1804), as an "implied in law warranty period". As stated in 2 M. Planiol, Traiteé élémentaire de Droit Civil § 1909 (Louisiana State Law Institute trans. 1959), the law declares building contractors responsible for their work during ten years. Planiol particularly noted that vices of construction do not appear at once, but after the building is being used. Because La. R.S. 38:2189 was not applicable to the construction in that case, it was not necessary to decide whether the prescriptive period established in La.R.S. 38:2189 shortened or *1168 otherwise had any effect upon the ten-year warranty period of La.C.C. Art. 2762.[3]
In State ex rel Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976), this court discussed, but did not resolve, the question of the effect of La.R.S. 38:2189 when the construction was completed after enactment of that statute. Reasoning that La.R.S. 38:2189 by its terms applies only to the general contractor and its surety on a public construction contract, this court held that the architect's plea of prescription based on La.R.S. 38:2189 was without merit. Inasmuch as the Simoni decision merely held that an architect is not a contractor within the contemplation of La.R.S. 38:2189, that case does not stand for the proposition that La.R.S. 38:2189 shortened La.C.C. Art. 2762's period of responsibility of a general contractor for defects in the construction of a public building.
Thus, the issue remains open whether La.R.S. 38:2189 absolutely curtails the right of a public board to hold the contractor responsible for defective workmanship in a public building when the defect manifests itself within less than ten years, but more than three years, after acceptance of the construction. An affirmative answer to this question would require, among other things, according La.R.S. 38:2189 the effect of a peremptive statute.
A person may lose his right to assert a cause of action because of passage of time by either peremption or prescription. Peremption is a limitation of time fixed by law for the existence of a right, and the effect of peremption is that the right becomes extinguished unless exercised within that period. La.C.C. Art. 3458. Prescription is also a limitation of time fixed by law for the exercise of a right, and the effect of prescription when pleaded by the obligor is that the obligee's untimely action is barred. While La.C.C. Art. 3461 provides that peremption may not be renounced, interrupted or suspended, prescription may be interrupted or suspended. Furthermore, a prescriptive statute is subject to the discovery rule embodied in the doctrine of contra non valentem agere nulla currit praescriptio, when that doctrine is invoked to suspend the running of prescription during the period in which the cause of action is not known or reasonably knowable to the plaintiff.[4]Corsey v. State of Louisiana, Department of Corrections, 375 So.2d 1319 (La.1979).
It is often difficult to determine whether a period of time fixed by law is peremptive or prescriptive. The determination of whether a statute has a peremptive effect is largely a matter of legislative intent and of construction of the particular statute. Pounds v. Schori, 377 So.2d 1195 (La. 1979); Griffin v. Succession of Branch, 479 So.2d 324 (La.1985), Dennis, J., dissenting, 480 So.2d 313 (La.1986). If the statute does not indicate in plain words that the period is one of peremption, the court must analyze the statute in its entirety, with particular focus on whether the purpose sought to be achieved involves matters of public policy or other compelling reasons for absolutely extinguishing a right which is not promptly exercised. Thus, the question in this case is whether La.R.S. 38:2189 indicates a legislative intent for a peremptive effect precluding the applicability of the doctrine of contra non valentem.
*1169 This court in Crier v. Whitecloud, 496 So.2d 305 (La.1986), held that the Legislature intended La.R.S. 9:5628 as both a prescriptive and a peremptive statute. That statute generally provides a prescriptive period for claims of medical malpractice of either one year from the date of the act or one year from the date of discovery of the injury, but the statute expressly limits the applicability of the discovery rule by requiring that malpractice claims in all events be filed within three years of the act.[5]
La.R.S. 9:2772 was at issue in Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles, 366 So.2d 1381 (La.1978). This court held that the statute, which prohibits bringing an action for injury and death allegedly caused by a construction defect more than ten years after acceptance of the construction, did not offend the plaintiff's constitutional right to due process because the statute merely prevented what might otherwise have been a cause of action from ever arising. The statute in Burmaster was clearly peremptive, both in its plain words (see footnote 2) and in its evident legislative intent.
Unlike the statute in the Crier case, La. R.S. 38:2189 does not mention, one way or the other, the applicability of the discovery rule, nor does it preclude the courts from applying the discovery rule in those cases in which it would be applicable under long standing jurisprudence. And unlike the statute in the Burmaster case, La.R.S. 38:2189 does not use the term "peremption" and does not set an outer limit for bringing an action with terms like "in all events" (Crier) or "in no event more than" (Burmaster) La.R.S. 38:2189, by its terms, merely provides a prescriptive period.
In order to achieve a peremptive effect, the Legislature must clearly indicate an intent to preclude the suspension of prescription during the period in which the plaintiff did not reasonably know of the cause of action. There is no indication that the Legislature intended La.R.S. 38:2189 as other than a prescriptive statute which is subject to the jurisprudential doctrine of contra non valentem Moreover, there is no apparent public policy reason for requiring a state board to file an action based on a construction defect within three years of acceptance, whether or not the defect has manifested itself, when owners of private property have ten years to do so. Finally, any doubt about the applicability of a prescriptive statute should be resolved in favor of maintaining the obligation. United Carbon Co. v. Mississippi River Fuel Corp., 230 La. 709, 89 So.2d 209 (1956).
Construing both La.C.C. Art. 2762 and La.R.S. 38:2189 together, we conclude that the former statute provided the Board a substantive right against the contractor for defects in construction because of badness in workmanship for a period of ten years. When construction defects appeared within this ten-year period, La.R.S. 38:2189 limited the Board to a period of three years for filing suit, reckoning from the time that the defects became known or reasonably knowable to the Board. On the record at this point in the present case, the cause of action for alleged defects in the roof was not known or reasonably knowable to the Board more than three years prior to the filing of suit.
Accordingly, the exception of prescription was properly overruled, and the judgment is affirmed.
WATSON and BLANCHE, JJ., dissent and assign reasons.
MARCUS, J., dissents for reasons assigned by WATSON, J.
*1170 WATSON, Justice, dissenting.
I respectfully dissent. The plain wording of LSA-R.S. 38:2189, applicable in the instant case, provided that "any action against the contractor on the contract or on the bond, or against the contractor and/or the surety on the bond furnished by the contractor, all in connection with the construction, alteration or repair of any public works ... shall prescribe three years from the registry of acceptance of such work..." The doctrine of contra non valentem is not applicable. The significant statutory language is "commencing from the date of registry of acceptance of the job." Hence, the action in this case brought more than three years after the acceptance of the construction was registered has clearly prescribed. The suggestion that a roof which leaked was not known to be defective strains the imagination. Accordingly, the exception of prescription should be sustained.
BLANCHE, Justice, dissenting.
Assuming the statute is a prescriptive statute, which it is not, the doctrine of contra non valentem agere nulla currit praescriptio is not applicable.

ON REHEARING
DENNIS, Justice.
We granted certiorari in this case, 481 So.2d 1341 (1986), to decide whether this action by a school board against a building contractor to recover damages caused by a defective school house roof is barred by liberative prescription.
In proceedings below, St. Charles Parish School Board filed suit on November 26, 1984, against the building contractor, Rittiner Engineering Company, Inc., for damages arising from the construction of a school building which had been completed and accepted on August 6, 1975. The building contractor filed an exception of prescription on the basis of La.R.S. 38:2189 which provides, in part, that actions against contractors in connection with public works shall prescribe three years from registry of acceptance of such work. The trial court overruled the exception and the court of appeal denied the school board's application for a supervisory writ.
After this court issued a writ of certiorari to the trial court, considered briefs and oral arguments, rendered a decision on original hearing, and granted a rehearing, counsel for a person not before this court informed us that the parties had settled the case. The parties acknowledged the settlement and upon our request furnished this court a copy of their "Settlement Agreement, Receipt, and Release of Liability". In their compromise, the contractor and its insurers paid the school board $90,000 for a full and final settlement of this lawsuit, and the school board agreed to dismiss this lawsuit with prejudice and to release and indemnify the contractor from all claims arising from the building project under state, federal or other law.
The agreement further provides that the contractor and its insurers have set aside $10,000 pending final resolution of this case by this court; that should this court either affirm its original decision or refrain from deciding the merits of the question presented this $10,000 will be paid to the school board; and that should this court reverse its original decision this $10,000 will be retained by the contractor and its insurer. Although the agreement at one point alludes to the $10,000 set aside provision as an exception to the agreement to settle and dismiss the lawsuit and to release defendants, it is clear from a reading of the whole agreement that it is not a true exception, that the settlement is full and final, and that the lawsuit must be dismissed and the defendants released no matter what this court elects to do about its decision on original hearing.
The full and final settlement of the entire controversy between the parties raises the question of whether this case is moot and no longer presents a justiciable controversy. It is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies. State ex rel. Vincent v. Blackburn, 376 So.2d 116 (La. 1979); In re Baer, 310 So.2d 537 (La.1975);
*1171 State ex rel. Preston v. Henderson, 283 So.2d 230 (La.1973); State v. Ward, 259 La. 317, 249 So.2d 921 (1971); Lasseigne v. Martin, 250 La. 1081, 202 So.2d 257 (1967); Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); State ex rel Jones v. Slater, 205 La. 1077, 18 So.2d 627 (1944); Pettingill v. Hills, Inc., 199 La. 557, 6 So.2d 660 (1942); Stannard Broadcasting v. Vernon Parish School Board, 422 So.2d 591 (La.App.3d Cir.1982); Watermeier v. Louisiana Stadium and Exposition Dist., 235 So.2d 114 (La.App.4th Cir.), cert. den. 256 La. 245, 236 So.2d 28 (1970).
In order to avoid deciding abstract, hypothetical or moot questions, courts require that cases submitted for adjudication be justiciable, ripe for decision, and not brought prematurely. Louisiana Indep. Auto Dealers Assoc. v. State, 295 So.2d 796 (La.1974); Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971); Spinato v. Lowe, 239 La. 604, 119 So.2d 480 (1960); State v. Board of Supervisors, LSU & A & M College, 228 La. 951, 84 So.2d 597 (1955); City Inv. Co. v. Williams, 171 La. 848, 132 So. 367 (1931); State ex rel. Duffy v. Goff, 135 La. 335, 65 So. 481 (1913); In re Pettis, 114 La. 870, 38 So. 590 (1905); Fairfield Dev. Co. v. Jackson, 438 So.2d 664 (La. App.2d Cir.1983); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); Ex parte Steele, 162 F. 694 (N.D.Ala.1908).
A "justiciable controversy" connotes an existing actual and substantial dispute, as distinguished from one that is merely hypothetical or abstract, and a dispute which involves the legal relations of the parties who have real adverse interest, and upon which the judgment of the court may effectively operate through a decree of conclusive character. Abbott v. Parker, 259 La. 279, 249 So.2d 908 (1971). See In re Gulf Oxygen Welder's Sup. Prof. Shar. P. & T. A., 297 So.2d 663 (La.1974); Petition of Sewerage and Water Bd., 248 La. 169,177 So.2d 276 (1965); Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).
A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41, 57 S.Ct. 461, 463-64, 81 L.Ed. 617 (1937); Brilmayer, The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement, 93 Harv.L.Rev. 297 (1979). If the case is moot "there is no subject matter on which the judgment of the court can operate". Ex parte Baez, 177 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed. 813 (1900). For these purposes a "moot" question connotes an issue that has been "deprived of practical significance" or "made abstract or purely academic." Webster's Third New International Dictionary, Unabridged (1976).
The doctrine that courts will not hear moot cases serves two complementary purposes: it prevents the useless expenditure of judicial resources and assures that the courts will not intrude prematurely into policymaking in a manner that unnecessarily constrains the other branches of government. P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and Federal System 110 (2d ed. 1973); Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373, 376 (1974); see United States Parole Comm. v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Mootness should therefore properly be regarded as rooted in part in the separation of powers, although its application is rooted as well in a rule of self restraint on the theory that the state should not be burdened with expense of litigating insubstantial controversies. Rotunda, Nowak & Young, Treatise on Constitutional Law: Substance and Procedure *1172 103 (1986); Note, The Mootness Doctrine in the Supreme Court, 88 Harv.L.Rev. 373, 374, & 375 (1974); Scott, Standing in the Supreme CourtA Functional Analysis, 86 Harv.L.Rev. 645 (1973); Note, Mootness on Appeal in the Supreme Court, 83 Harv.L. Rev. 1672 (1970); Comment, Disposition of Moot Cases by the United States Supreme Court, 23 U.Chi.L.Rev. 77, 78 fn. 5 (1955).
All of the legal questions arising from the controversy between the parties in the present case became moot, abstract or hypothetical upon the settlement of the case. The compromise or settlement of the lawsuit extinguished the original demand or claim and prevents any further action or proceeding thereon. La.C.C. art. 3071; Succession of Burns, 199 La. 1081, 7 So.2d 359 (1942); Kelly v. Homer Compress Co., 110 La. 983, 35 So. 256 (1903); Upton v. Adeline Sugar Factory Co., 109 La. 670, 33 So. 725 (1903). Moreover, because the action cannot be prosecuted further, any exception or means of defense sought to be used by the defendant to extinguish or bar the action, such as prescription or peremption, has been made abstract or purely academic. Accordingly, we conclude that the validity of the plaintiff's claim and the efficacy of the defendant's exception are moot questions.
The parties contend, however, that their agreement to pay or forego receipt of $10,000 contingent upon this court's future action prevents the controversy from becoming moot because the case has been settled only partially and this court's decree can have the practical consequence of deciding who keeps that sum. This argument is an attempt to bring this case within one of the exceptions to mootness developed by the United States Supreme Court in cases raising constitutionality of statutes, or cases seeking judicial review of administrative action. See Wright, The Law of Federal Courts 54 (4th Ed.1983). Pretermitting whether the Supreme Court precedents are applicable in private contract law litigation, we conclude, for other reasons, that the present case is fundamentally distinguishable and does not fall within either of these exceptions to the mootness doctrine.
The high court has held that although it may become unnecessary or impossible to grant the primary relief originally sought in an action, remaining consequences of the litigation may prevent the case from becoming moot. See, e.g., Powell v. McCormack, 395 U.S. 486, 495-500, 89 S.Ct. 1944, 1950-53, 23 L.Ed.2d 491 (1969) (actual seating of Congressman no longer possible, but question of back salary survives); Liner v. Jafco, Inc., 375 U.S. 301, 304-09, 84 S.Ct. 391, 393-96, 11 L.Ed.2d 347 (1964) (injunctive relief mooted, but liability on indemnity bond remains); but cf. Local No. 8-6, Oil Workers v. Missouri, 361 U.S. 363, 369-70, 80 S.Ct. 391, 395-96, 4 L.Ed.2d 373 (1960) (injunctive relief mooted, remaining penalty provisions severable and subject of separate action). See also University of Texas v. Camenisch, 451 U.S. 390, 393-94, 101 S.Ct. 1830, 1833-34, 68 L.Ed.2d 175 (1981) (injunction moot after student graduated, but the question of whether the University must pay the deaf student's interpreter remained); North Carolina v. Rice, 404 U.S. 244, 246-48, 92 S.Ct. 402, 404-05, 30 L.Ed.2d 413 (1971) (respondent had served his sentence, but there remained the possibility of benefits to respondent under North Carolina law in having the sentence reduced after he had served his time); cf. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946).
The agreement between the parties that one or the other would receive the $10,000 sum depending on whether this court reversed, affirmed or vacated its original decision (because of mootness) was not a consequence necessarily following from the controversy. Nor was it a result which would naturally remain after a termination of this litigation. It was instead the creation of an entirely new and separate contract by free choice of the parties for the exclusive purpose of attempting to obtain a decision by this court on a preliminary issue in the lawsuit which they had completely settled. In other words, it was a stake arbitrarily set up in an attempt to have this *1173 court continue to litigate what would otherwise be a dead issue.
Also, the Supreme Court has held that where the parties continue to actively dispute legal or factual issues of the controversy, the fact that they have settled on a measure of damages, in the event damages are awarded, does not make their claims moot. Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); Havens Realty Corp. v. Coleman, 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).
However, the $10,000 wager was not intended to be a liquidation of damages. The parties frankly admitted that the only purpose of their agreement in staking the sum on the outcome of this court's decision was to attempt to prevent the prescription exception from becoming moot. They do not suggest that the amount or the possible dispositions of the sum has anything to do with damages. Indeed, it is difficult to imagine any relation, since under their scheme the money would be awarded according to the dead-end outcome of a decision on the academic prescription-peremption issue as opposed to a factual or legal issue related to the merits of the case or to the substantive question of damages.
In essence, the parties' object is to elicit from this court an opinion on a question of law that has become academic because of their settlement, and their dispute over the $10,000 stake is nonexistent or at best a feigned controversy. It is fundamental in our law that courts sit to administer justice in actual cases and that they do not and will not act on feigned ones, even with the consent of the parties. State v. Board of Supervisors, 228 La. 951, 84 So.2d 597 (1955); see State ex rel Howard v. Burbank, 22 La.Ann. 298 (1870); Livingston v. D'Orgenoy, 1 Mart (O.S.) 86, 108 F. 469 (D.C.La.1809). The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When in determining such rights, it becomes necessary to give an opinion on a question of law, that opinion may have weight as a precedent for future decisions. But the court is not required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of the parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty of the court in this regard. See United States v. HamburgAmerikanische Packetfahrt Actien Gesellschaft, 239 U.S. 466, 36 S.Ct. 212, 60 L.Ed. 387 (1916); California v. San Pablo & Tulare R. Co., 149 U.S. 308, 13 S.Ct. 876, 37 L.Ed. 747 (1893).
Because the counsel for the parties acknowledged the fact that the case had been settled belatedly and only after we had received notice of this event from another source, we adopt as our own the admonition and rule expounded recently by the United States Supreme Court:
It is appropriate to remind counsel that they have a "continuing duty to inform the Court of any development which may conceivably affect the outcome" of the litigation. Fusari v. Steinberg, 419 U.S. 379, 391, 95 S.Ct. 533, 540, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring). When a development after this Court grants certiorari or notes probable jurisdiction could have the effect of depriving the Court of jurisdiction due to the absence of a continuing case or controversy, that development should be called to the attention of the Court without delay. Board of License Commr's. of the Town of Tiverton v. Pastore, 469 U.S. 238, 240, 105 S.Ct. 685, 687, 83 L.Ed.2d 618 (1985).
Being of the opinion that this case no longer presents a justiciable controversy, the vacating of our original opinion and decree by the granting of rehearing is confirmed, the ruling of the trial court is reversed, and the case is remanded to the trial court with a direction to dismiss.
IT IS SO ORDERED.
NOTES
[*] Blanche, J., retired, participated in this case ad hoc in place of Cole, J., the matter having been heard and submitted before Justice Cole replaced Justice Blanche on the Court.
[1] A reviewing court should grant an application for supervisory review of an interlocutory judgment which appears to be incorrect when the facts are not in dispute and reversal of the judgment will terminate the litigation. Herlitz Construction Co. v. New Iberia Hotel Investors, 396 So.2d 878 (La.1981).
[2] La.C.C. Art. 2762 provides:

"If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks."
La.R.S. 9:2772 provides in part:
"A. No action, whether ex contractu, ex delicto, or otherwise, to recover on a contract or to recover damages shall be brought against any person performing or furnishing land surveying services, as such term is defined in the first paragraph of R.S. 37:682(9), including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of an improvement to immovable property:
"(1) More than ten years after the date of registry in the mortgage office of acceptance of the work by owner;
"B. The causes which are preempted (sic) within the time described above include any action:
"(1) For any deficiency in the performing or furnishing of land surveying services, as such term is defined in the first paragraph of R.S. 37:682(9), including but not limited to those preparatory to construction or in the design, planning, inspection or observation of construction, or in the construction of any improvement to immovable property:
"(2) For damage to property, movable or immovable, arising out of any such deficiency;
"This pre-emptive (sic) period shall extend to every demand whether brought by direct action or for contribution or indemnity or by third party practice, and whether brought by the owner or by any other person.
"C. If such an injury to the property or to the person or if such a wrongful death occurs during the ninth year after the date set forth in Sub-section A, an action to recover the damages thereby suffered maybe brought within one year after the date of the injury, but in no event more than eleven years after the date set forth in Sub-section A (even if the wrongful death results thereafter)." (emphasis added)
[3] It was also unnecessary in Pittman, because the construction defects were discovered and suit was filed within ten years of acceptance, to determine whether the ten-year period in La. C.C. Art. 2762 was solely a warranty period or was also a limitation on filing suit. In Planiol, supra at § 1914, it was suggested that Code Napoleon Article 1792 (1804) established a single delay for both the period of responsibility and the prescription of the action. However, since La.C.C. Art. 3545 then in effect (see present La.C.C. Art. 3500) fixed the prescriptive period for actions against contractors and architects for defects in buildings, it was arguable that La.C.C. Art. 2762 provided only a period of responsibility.
[4] The Legislature did not abolish the applicability of the doctrine of contra non valentem in the 1982 revision of the Civil Code. While La.C.C. Art. 3467, as revised in 1982, provides that "prescription runs against all persons unless exception is established by legislation" (see former Article 3521), the revision comments to La.C.C. Art. 3467 note that the courts have resorted to the doctrine of contra non valentem in exceptional cases and that "this jurisprudence continues to be relevant" after the 1982 revisions.
[5] Once it was determined that the three-year period in La.R.S. 9:5628 had a peremptive effect, six members of this court (two of the dissenters disagreed only with the failure to remand) concluded that the statute was not violative of the open courts, due process or equal protection guarantees of the Louisiana Constitution. In the present case, the statute which provides favorable treatment only to a particular class (general contractors) of those persons engaged in the construction of public buildings may be constitutionally suspect, but that issue need not be decided here.