IN RE: COMMITMENT OF C.F.
No. 2009 CA 0936
Court of Appeals of Louisiana, First Circuit.
October 23, 2009
Not Designated for Publication
MARY F. HORRELL, Mandeville, LA, Counsel for Appellee, State of Louisiana, Department of Health and Hospitals.
PAMELA TONEY CRAWFORD, Mandeville, LA, Counsel for Defendant/Appellant, C.F.
Before: WHIPPLE, HUGHES, and WELCH, J.J.
HUGHES, J.
This is an appeal from a judicial commitment wherein the defendant, C.F., contests the validity of the proceeding, asserting that the health care provider-patient privilege was violated. For the reasons that follow, we dismiss the appeal.

FACTS AND PROCEDURAL HISTORY
On August 13, 2008 Dr. Christopher Lartigue, a physician at LSU/HSC-Bogalusa Medical Center Behavioral Health Unit ("LSU/HSC-BMC"), filed a petition for the judicial commitment of C.F. In that petition, Dr. Lartigue stated that C.F. was then hospitalized at LSU/HSC-BMC and was in need of continued treatment, having prior to admission, displayed delusional and paranoid behaviors, was living out of her car, and had previously been "assaultive." Dr. Lartigue further alleged that C.F. at that time continued to exhibit paranoid delusional behaviors, was a danger to others, was gravely disabled and unable to provide for her own basic physical needs, denied having a mental illness or needing medications, and because of her condition was unable or unwilling to voluntarily continue treatment. Based on the petition, the district court issued an order on August 14, 2008: setting the matter for a commitment hearing; appointing attorney Pam Crawford to represent C.F.; advising C.F. of her right to counsel of her choosing and her right to cross-examine witnesses at the commitment hearing through counsel; appointing Dr. Lartigue to examine C.F. prior to the commitment hearing and report to the court concerning the examination pursuant to LSA-R.S. 28:54;[1] and maintaining C.F. in the custody of LSU/HSC-BMC pending the commitment hearing. The parties do not dispute the fact that both C.F. and her appointed attorney, Ms. Crawford, were served with the petition and order.
At the October 3, 2008 judicial commitment hearing, counsel for C.F. objected to the admissibility of the testimony of Dr. Lartigue, arguing that LSA-C.E. art. 510[2] had not been complied with, insofar as Dr. Lartigue had not verbally advised C.F. at the time of his examination, despite C.F. having received notice via service of the petition for commitment, that his examination of her was for purposes of reporting to the court and therefore not subject to the health care provider-patient privilege. The State asserted that service of the order of the court, stating that Dr. Lartigue was appointed to examine C.F. and thereafter submit a report to the court, was notice sufficient to comply with LSA-C.E. art. 510. After hearing the arguments of counsel, the district court ruled in favor of the State, but confined testimony by Dr. Lartigue to matters other than communications made by C.F. directly to him. C.F. continued to object, through counsel, to the introduction of any testimony or reports by Dr. Lartigue as having been based on "information that he got from her and from the reviewing of her medical records," which were asserted as being subject to the health care provider-patient privilege. The district court nevertheless ruled that the "doctor certainly can testify as to review of records and his opinion, but we are just excluding the communications."
After hearing the testimony of the witnesses, Dr. Lartigue, Joanne Holden (C.F.'s mother), Gail Stewart (C.F.'s maternal aunt), and C.F., the district court ruled that C.F. was in need of continued hospitalization, but urged Dr. Lartigue to "reexamine" a possible conditional release. The district court judge then signed a judgment finding C.F. to be "suffering from a mental illness which causes [C.F.] to be dangerous to self or others or gravely disabled," and further adjudging C.F. to be "mentally ill within the meaning of R.S. 28:1 et seq., as amended, and that accordingly, [C.F.] is hereby committed to a state treatment facility for observation, care and treatment in accordance with law." C.F. has appealed this judgment.

DISCUSSION
On appeal, C.F. maintains that the district court erred in "permitting the court appointed physician to disclose confidential communications in a judicial commitment proceeding without informing the patient prior to the communication that such communications are not privileged."
In response to the appeal, the State contends that the appeal is moot. In support of its assertion, the State declares that following C.F.'s October 3, 2008 judicial commitment, she was conditionally discharged on October 23, 2008, that the conditions of the discharge expired after 120 days in accordance with LSA-R.S. 28:56(G), and that C.F. is now at liberty. Therefore, the State asserts that any judgment or decree by this court can give no practical relief.
C.F. acknowledges the facts provided by the State in brief to this court, but argues this court should nevertheless render an opinion in this matter pursuant to exceptions to the mootness doctrine, contending: (1) the challenged action was too short in duration to be fully litigated before its cessation or expiration, and (2) there is a reasonable expectation that C.F. will be subject to the same action again. C.F. further argues that, because of the strong public policy in favor of protecting the health care provider-patient privilege, this court should "take" jurisdiction of the action despite its mootness and decide the question of whether the district court misinterpreted LSA-C.E. 510.
It is well settled that courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions with respect to controversies. Cases submitted for adjudication must be justiciable, ripe for decision, and not brought prematurely. A "justiciable controversy" is one presenting an existing actual and substantial dispute involving the legal relations of parties who have real adverse interests and upon whom the judgment of the court may effectively operate through a decree of conclusive character. A "justiciable controversy" is thus distinguished from one that is hypothetical or abstract, academic, or moot. City of Hammond v. Parish of Tangipahoa, XXXX-XXXX, pp. 6-7 (La. App. 1 Cir. 3/26/08), 985 So.2d 171, 178 (citing St. Charles Gaming Company v. Riverboat Gaming Commission, 94-2679, p. 6 (La. 1/17/95), 648 So.2d 1310, 1315, and St. Charles Parish School Board v. GAF Corporation, 512 So.2d 1165, 1170-71 (La. 1987)).
An issue is moot when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." Thus, a case is moot when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may abate if the case becomes moot. The controversy must normally exist at every stage of the proceeding, including the appellate stages. A case may become moot for several reasons, including: because the law has changed; because defendant has paid funds owed and no longer wishes to appeal, notwithstanding plaintiffs desire to obtain a higher court ruling; because allegedly wrongful behavior has passed and could not reasonably be expected to recur; because a party could no longer be affected by a challenged statute, for example, a law regulating rights of minors when the party, through lapse of time, is no longer within the age brackets governed by the statute; or because a party has died. City of Hammond v. Parish of Tangipahoa, XXXX-XXXX at p. 7, 985 So.2d at 178 (citing Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601, pp. 8-9 (La. 10/20/98), 720 So.2d 1186, 1193)).
Even though the requirements of justiciability are satisfied when the suit is initially filed, when the fulfillment of these requirements lapses at some point during the course of litigation before the moment of final disposition, mootness occurs. In such a case, there may no longer be an actual controversy for the court to address, and any judicial adjudication on the matter would be an impermissible advisory opinion. See City of Hammond v. Parish of Tangipahoa, XXXX-XXXX at pp. 7-8, 985 So.2d at 178 (citing Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 at p. 9, 720 So.2d at 1193-94). A court must refuse to entertain an action for a declaration of rights if the issue presented is academic, theoretical, or based on a contingency which may or may not arise. American Waste & Pollution Control Company v. St. Martin Parish Police Jury, 627 So.2d 158, 162 (La. 1993). Nor is a court required to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. Council of City of New Orleans v. Sewerage and Water Board of New Orleans, XXXX-XXXX, p. 5 (La. 4/11/07), 953 So.2d 798, 802 (quoting St. Charles Parish School Board v. GAF Corporation, 512 So.2d at 1173).
However, exceptions to the mootness doctrine have been recognized to prevent either party from creating a technical mootness as a sham to deprive the court of jurisdiction. When a defendant has voluntarily ceased complained-of conduct, a court should consider: (1) whether there is any reasonable expectation that the alleged violation will recur; and/or (2) whether there are unresolved collateral consequences (such as an outstanding claim for compensatory or other monetary relief). See Cat's Meow, Inc. v. City of New Orleans Through Department of Finance, 98-0601 at pp. 9-13, 720 So.2d 1194-96.
In the instant case, C.F. has not raised any compensatory claims or otherwise sought monetary relief. However, C.F. argues that "based on her diagnosis and history" she is "likely to face the same action again." Nevertheless, we do not find C.F.'s conjecture sufficient to establish a "reasonable" probability of the future necessity of her confinement to a mental health treatment facility or that she would further be subject to a judicial commitment proceeding. In fact, C.F. recognized the following during her testimony at the judicial commitment hearing held in this case: "I seem to be responding to the medication and if you don't have a mental illness I don't know that you would respond to the medication." C.F. further recognized that if she were to be placed in out-patient treatment, she would have to continue taking her medication or she would face being placed in the hospital again. When considering these realizations by C.F. in light of her hospitalization admission prognosis of "[pjoor due to actively resistant insight, refusal to accept disability or medication treatment," it would seem that her treatment had been more successful than the prognosis comprehended and that the probability of future necessary hospitalization is thereby lessened. Consequently, we are unable to conclude based on the record presented on appeal that the situation complained of, having abated prior submission of C.F.'s appeal to this court for decision, could be reasonably expected to recur in the future. Thus, we find no valid exception to the mootness rule exists in this case.[3]

CONCLUSION
For the reasons assigned, we find this appeal to be moot and should be dismissed. All costs of this appeal are to be borne by C.F., appellant herein.
APPEAL DISMISSED.
NOTES
[1] Louisiana Revised Statute 28:54 provides in pertinent part as follows:

§ 54. Judicial commitment; procedure
A. Any person of legal age may file with the court a petition which asserts his belief that a person is suffering from mental illness which contributes or causes that person to be a danger to himself or others or to be gravely disabled, or is suffering from substance abuse which contributes or causes that person to be a danger to himself or others or to be gravely disabled and may thereby request a hearing. . . .
* * *
D. (1)... If the court determines that probable cause exists, the court shall appoint a physician, preferably a psychiatrist, to examine the respondent and make a written report to the court and the respondent's attorney on the form provided by the office of human services of the Department of Health and Hospitals. The court-appointed physician may be the respondent's treating physician.. . .
[2] Louisiana Code of Evidence Article 510 provides in pertinent part:

Art. 510. Health care provider-patient privilege
B. (1) General rule of privilege in civil proceedings. In a non-criminal proceeding, a patient has a privilege to refuse to disclose and to prevent another person from disclosing a confidential communication made for the purpose of advice, diagnosis or treatment of his health condition between or among himself or his representative, his health care provider, or their representatives.
(2) Exceptions. There is no privilege under this Article in a noncriminal proceeding as to a communication:
* * *
(f) When the communication is made in the course of an examination ordered by the court with respect to the health condition of a patient, the fact that the examination was so ordered was made known to the patient prior to the communication, and the communication concerns the particular purpose for which the examination was made, unless the court in its order directing the examination has stated otherwise.
(g)(i) When the communication is made by a patient who is the subject of an interdiction or commitment proceeding to his current health care provider when such patient has failed or refused to submit to an examination by a health care provider appointed by the court regarding issues relating to the interdiction or commitment proceeding, provided that the patient has been advised of such appointment and the consequences of not submitting to the examination.
(ii) Notwithstanding the provisions of Subitem (i) of this Item, in any commitment proceeding, the court-appointed physician may review the medical records of the patient or respondent and testify as to communications therein, but only those which are essential to determine whether the patient is dangerous to himself, dangerous to others, or unable to survive safely in freedom or protect himself from serious harm. However, such communications shall not be disclosed unless the patient was informed prior to the communication that such communications are not privileged in any subsequent commitment proceedings. The court-appointed examination shall be governed by Item B(2)(f).
[3] We likewise find no merit in C.F.'s other arguments urging this court to decide the issues raised despite the mootness of the litigation. While we agree with C.F. that the general public has a great interest in the protection of the health care provider-patient privilege, we do not find this case to be in a proper procedural posture for this court's consideration. Nor do we find that this case is subject to the recognized mootness exception applicable to challenged actions of a duration too short to be fully litigated prior to cessation or expiration. As made plain by the supreme court in In re Grand Jury, in order for this exception to be applicable, there must also be a finding that "there is a reasonable expectation that the same complaining party [will] be subjected to the same action again." In re Grand Jury, 98-2277, p. 11 (La. 4/13/99), 737 So.2d 1,11 (quoting First National Bank of Boston v. Bcllolti. 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978)). We make no such finding, as stated hereinabove.