# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #009

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **6th day of March, 2026** are as follows:

**BY Weimer, C.J.:**

2025-C-00866
Consolidated with
2025-C-00868

BEVERLY ALEXANDER; RISE ST. JAMES; INCLUSIVE LOUISIANA; AND MOUNT TRIUMPH BAPTIST CHURCH BY AND THROUGH THEIR MEMBERS  VS.  ST. JAMES PARISH (Parish of St. James)

VACATED AND RENDERED. SEE OPINION.

Guidry, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2025-C-00866

### c/w

## No. 2025-C-00868

## BEVERLY ALEXANDER; RISE ST. JAMES; INCLUSIVE LOUISIANA; AND MOUNT TRIUMPH BAPTIST CHURCH BY AND THROUGH THEIR MEMBERS

## VS.

## ST. JAMES PARISH

*On Writ of Certiorari to the Court of Appeal, Fifth Circuit, Parish of St. James*

**WEIMER**, Chief Justice[*]

Koch Methanol St. James, LLC ("Koch"), applied for a land use permit in St. James Parish ("Parish") seeking approval for a project to upgrade its already existing methanol production facility. Plaintiffs opposed the project. The approval process is governed by the St. James Parish Land Use Plan ("Plan"). Pursuant to the Parish's interpretation of the Plan, the project was considered and approved by the Parish Planning Commission ("Commission"). Plaintiffs' appeal to the Parish Council ("Council") was rejected. Plaintiffs sought judicial review in the district court, which upheld the Council's decision. However, a divided panel of the court of appeal reversed the district court's ruling. Applying what the majority of the court of appeal referred to as "de novo review," the appellate court disagreed with the Parish's

---

[*] Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed as Justice pro tempore, sitting for the vacancy in the First District.

interpretation of the Plan and interpreted the Plan to require a more stringent and extensive review process.

Certiorari was granted to examine whether the court of appeal majority erred in its ruling, which in turn requires us to clarify the proper scope of judicial review of land use decisions by local governments. For the reasons that follow, we vacate the ruling of the court of appeal, finding that court exceeded its role and erred by applying a de novo standard of review and failing to accord the decision of the Parish appropriate discretion. The court of appeal failed to consider whether the interpretation of the land use plan by Parish officials and the resulting decision were arbitrary and capricious, absent which the Parish's decision must be upheld as a legitimate exercise of its constitutionally vested power to make land use decisions.[1]

## FACTS AND PROCEDURAL HISTORY

Koch operates a methanol production facility in St. James Parish. On July 12, 2023, the company submitted a land use permit application proposing an upgrade to its existing facility which required the installation of a pipeline to connect to an existing ethane pipeline owned by a third party, approximately 1000 feet of which would run through a wetlands area. The third-party underground ethane line already traverses the wetlands. Approval of the application is governed by the Plan, contained in Section 82-25 of the St. James Parish Code of Ordinances. Section 82-25 is a master plan which incorporates a three-level system of review and approval, each requiring a different level of scrutiny. The underlying dispute concerns whether the Parish engaged in the proper decision making process required under the Plan in

---

[1] This court will also address and reject a motion to dismiss filed by plaintiffs.

approving Koch's land use application, more specifically whether the requested land use falls under Tier 2 or the more stringent Tier 3 review process.[2]

Section 82-25(c) outlines "allowable uses" for each "land use category." Tier 2 review pursuant to Section 82-25(f) generally involves listed "allowable uses" under Section 82-25(c) when the proposed use involves a large land area or requires certain state or federal permits. Such use requires approval by the Commission.[3] The more extensive Tier 3 review is required when the proposed use is prohibited at its proposed location by virtue of the list of allowable uses set forth in Section 82-25(c). If a use is not listed as an "allowable use," approval requires public vetting, a recommendation from Commission, and approval by the Council, which has authority to approve or deny a project. Section 82-25(e) directs that such use is prohibited unless the Commission considers the use and makes affirmative findings in accordance with certain outlined factors[4] and the Council approves the use. The

_____

[2] Application of Tier 1 review is not at issue. Basic Tier 1 review applies when a proposed project is on the list of allowable uses designated for its particular location. Approval is handled administratively as a matter of course through the Parish's customary building permit process.

[3] Section 82-25(f) provides in part:

> Planning commission consideration of certain allowable uses. Notwithstanding subsection (d) of this section, the following uses or activities shall not be issued a building permit until approved by the planning commission (or by the parish council on appeal):
>
> (1) Any residential building containing three or more dwelling units.
> (2) Any nonresidential development exceeding 10,000 square feet of building area or sites three acres or more.
> (3) Any commercial or industrial development that requires a state or federal permit for air, water, solid waste, hazardous materials, or section 404 [of the Clean Water Act] Wetland/Rivers and Harbors Act permits ....

[4] Section 82-25 (e) directs the Commission to make affirmative findings regarding the following under subsection (h):

> (1) Whether the impacts of the proposed use would be substantially different from the impacts of allowable uses for the districts. Such impacts may include, but are not limited to, air and water emissions, noise, lighting, traffic (road and rail), effect on property values, and neighborhood.
> (2) The public benefits of the proposed use, such as job creation, expansion of the tax base, and enhancing the attractiveness of the parish for future development.

Commission cannot recommend a use for approval, and the Council cannot approve a use, unless it makes affirmative findings that there is a compelling public benefit, that the use is compatible with surrounding uses and adverse impacts of the use are inconsequential; or that approval is required as a matter of constitutional imperative or other vested legal right superior to this section.

> Section 82-25(c) specifies the allowable uses for "wetlands" as follows:

> Shown for information only; wetland areas should remain unoccupied except for unique situations requiring a location in the water, subject to any permits required under article V, chapter 18.

The Commission considered Koch's application at a meeting on July 31, 2023. It determined the pipeline was an allowable use under Section 82-25(c) under this circumstance (i.e., a "unique situation"), and applied Tier 2 review under Section 82-25(f) in approving Koch's application. The resolution granting approval provided, in pertinent part:

> WHEREAS, Koch Methanol St. James, LLC ("Koch") applied for approval to increase the capacity of its existing methanol plant ... predominantly in an area designated in the Land Use Plan for Industrial Use and to a limited extent in an area designated as Wetlands, identified as #23-25 (the "Application"); and

> WHEREAS, public notice of the Application was published in accordance with Section 82-25(g)(2) of the St. James Parish Code of Ordinances and public comments on the proposal were solicited; and

> WHEREAS, the commission took up the matter at its meeting of July 31, 2023, when it received and considered a presentation by Koch about the Application, along with one citizen comment in favor of the project and none against, and questions posed by the commission members were responded to by Koch representatives; and

---

(3) The physical and environmental impacts of the proposed use on the air, water, and land, with particular attention to whether the public benefits of the proposed use are commensurate with those impacts, and whether the environmental impacts may impair the ability of the parish to attract other beneficial development.
(4) Vested property rights and other constitutional protections enjoyed by the proponent of the proposed use.
. . . .

WHEREAS, the commission also received an explanation from its counsel as to how the land use ordinance applied to the application, and the decision-making criteria therein, Counsel also addressed the allowability of the ethane pipeline connection depicted in the **Application being located in an area designated as Wetlands in the land use plan, such pipeline connection being a unique situation requiring a location in a Wetlands area because the existing ethane pipeline to which the connection will be made is already located in the Wetlands area, in accordance with ordinance Section 82-25(c)(11). The commission concurs that the pipeline connection is an allowable land use in the Wetlands in this circumstance**.

NOW, THEREFORE, BE IT RESOLVED **under ordinance Section 82-25(f), that the planning commission hereby approves the Application**, subject to the conditions stated below.

\*\*\*

BE IT FURTHER RESOLVED that the planning commission finds that approval is appropriate under ordinance Section 82-25, with specific reference to the factors described in Section 82-25(h) because: the impacts of the proposed use are common to industrial plants and would not be substantially different from the impacts of other allowable uses [in] industrial areas; the project would retain existing jobs while providing new job opportunities, and would expand the tax base with the value of additional facilities. Such benefits outweigh the relatively modest physical and environmental impacts without impairing the parish's ability to attract other beneficial development by virtue of the project's location in an industrial area and its distance from potentially impacted uses.

\*\*\*

(Emphasis added.)

Plaintiffs appealed the Commission's decision to the Council. Following a public hearing, the Council voted unanimously to reject the appeal. Plaintiffs then sought judicial review in the district court. Following briefing and a hearing, the district court denied plaintiffs' request to reverse the Council's decision. The court analyzed the issue under laws governing review of zoning decisions, explaining that what the law requires is a review of the overall decisions and decision-making processes followed by the Parish entities to determine whether those actions were arbitrary, capricious and unreasonable:

5

> Judicial review of zoning decisions acts merely as a check on the legislative power ... to ensure there is no abuse of that power. Courts will not and cannot substitute their judgment for that of the legislative authority. Louisiana jurisprudence provides that a presumption of validity attache[s] to all zoning decisions. The burden rests on the challenger to overcome this presumption .... The interpretation of a legislative authority with respect to a legislative zoning ordinance is entitled to great weight. **The Louisiana Supreme Court has stated that, "in order to justify a holding that the legislative action is arbitrary, capricious and unreasonable," the challenger must show "that there was no room for a reasonable difference of opinion, and that there was no substantial evidence upon which the legislative action could have been justified.** [Internal citations omitted; emphasis in original.]

The court acknowledged that the language referencing "wetlands" in Section 82-25(c) creates an ambiguity because the procedure for evaluating uses in wetlands is not succinctly defined, but found the Parish properly rejected plaintiffs' argument that Tier 3 review was required. The court reasoned that plaintiffs' interpretation of the language (that any use in the wetlands, no matter how small, would require consideration by the Commission as well as approval by the Council) would produce an absurd result.

The district court further found the Council's decision was not arbitrary, capricious, or unreasonable. The court noted that the permit was subject to two separate public hearings before two governmental bodies. Representatives of the public and Koch were allowed to attend and speak at the hearings. There was substantial public comment, discussion and presentations regarding the permit at the appeal of the Commission's decision before the Council. The district court found that the procedures followed by the Commission and the Council in reaching a decision on the permit were "done honestly and upon due consideration" and that the issues presented regarding the approval or denial of the permit left room for reasonable differences of opinion to those considering the application. Thus, the court concluded

that the decisions of both the Commission and the Council do not meet the arbitrary, capricious and unreasonable standard as defined under the law.

Plaintiffs filed an appeal in the appellate court, which reversed the district court's ruling in a split opinion. **Alexander v. St. James Par**., 24-557 (La. App. 5 Cir. 5/14/25), 415 So.3d 437. Engaging in what the majority referred to as a "de novo review" of the Plan, the court found that any proposed use in the wetlands is generally a non-allowable use, but that certain exceptions may be permitted once the Commission has conducted Tier 3 level review of the process pursuant to Section 82-25(e) and has recommended approval to the Council. **Alexander**, 24-557 at 10, 415 So.3d at 446. The court disagreed with the Parish's interpretation of the phrase "unique situation requiring a location in the water." *Id.* The court noted an ambiguity exists regarding what may be considered a "unique situation" that could ultimately become an approved use of the wetlands. *Id.*, 24-557 at 11, 415 So.3d at 446. Because "pipeline" is not listed specifically as an allowable use, the court found such use is prohibited unless approved using the Tier 3 review process. *Id*. The court concluded the Parish failed to follow its own ordinance by using Tier 2 review under Section 82-25(f), rather than Tier 3 review under Section 82-25(e), to analyze Koch's land use application. Thus, the court reversed the decision of the Council denying plaintiffs' appeal and remanded the matter for further proceedings. *Id.*, 24-557 at 14-15, 415 So.3d at 449.

Judges Molaison and Windhorst dissented, rejecting the contention that Tier 3 review was required. *Id.*, 24-557 at 2, 415 So.3d at 450. The dissent noted that Section 82-25(c) is clear that "unique situations requiring a location in the water" are "allowable uses" in wetlands. *Id.*, 24-557 at 1, 415 So.3d at 449. The dissent found the Parish's interpretation of this language does not lead to an absurd result on the

facts presented and is not clearly wrong. "Here, tapping into the existing ethane pipeline falls within the very definition of a unique situation, as the only logical way to physically approach the pipeline is through the wetland." *Id.*, 24-557 at 1-2, 415 So.3d at 449. Adopting the district court's reasons for judgment, the dissent found that Koch's proposed pipeline extension falls squarely in the category of "unique situations requiring a location in the water," as provided in the "wetlands" provision of the Plan. *Id.*, 24-557 at 2, 415 So.3d at 450.[5]

Defendants, Koch Methanol St. James, LLC and St. James Parish, filed writ applications in this court which were granted. **Alexander v. St. James Par**., 25-0866 (La. 10/22/25), 421 So.3d 883; **Alexander v. St. James Par**., 25-0868 (La. 10/22/25), 421 So.3d 883. Subsequently, plaintiffs filed a "Motion to Dismiss Proceedings" in this court. Plaintiffs state that Koch resubmitted its land use application which was then approved by Parish following procedures outlined in the court of appeal's opinion, and that construction of the pipeline through the wetlands was complete. Thus, plaintiffs assert the writ applications are moot. This court referred the motion to the merits.

---

[5] The original opinion issued by the court of appeal was corrected on limited rehearing to delete references to a prior version of La. R.S. 49:964(G), which addressed judicial review of state agency decisions in adjudication proceedings. The court explained on rehearing:

> This Court found that the Parish failed to follow its own ordinance in violation of La. R.S. 49:964. Upon review, we agree that we concluded, in error, that Appellee, St. James Parish was required to comply with La. R.S. 49:964 for this action, and we have corrected the appropriate portions of the analysis in the opinion. Accordingly, we grant the rehearing applications for the limited purpose of issuing the corrected opinion rendered on June 6, 2025.

**Alexander v. St. James Par.**, 24-557, p. 1 (La. App. 5 Cir. 6/6/25).

**DISCUSSION**

**Motion to Dismiss**

As a threshold issue, plaintiffs' motion to dismiss must be addressed. As detailed above, Koch's initial application was approved by the Commission, and plaintiffs' appeal to the Council and petition for judicial review in the district court were denied. Following the court of appeal's reversal and remand of the matter to the Commission, Koch submitted an updated application[6] to the Parish consistent with the court of appeal's decision. The Commission considered and unanimously recommended the Council approve the application on June 30, 2025. On August 6, 2025, the Council considered the recommendation and passed a resolution approving Koch's application and denying plaintiffs' related appeal. Notably, the resolution made clear the Council did not change its original interpretation of the Plan and that it disagreed with the court of appeal opinion, stating in relevant part:

> **NOW, THEREFORE BE IT RESOLVED** as follows:
>
> 10. As the legislative body of the parish, the parish council finds that the Fifth Circuit's decision misapplied the parish's land use ordinance in the following non-exclusive particulars:
>
>    a. The land use ordinance expresses the parish's preference to leave Wetlands in their natural state, but it does not prohibit development in wetlands. The ordinance fully anticipates that limited development may occur in Wetlands.
>
>    b. Unique situations requiring a location in Wetlands are allowable uses under the land use ordinance, and are not subject to the approval process and the criteria in code of ordinances Sec. 82-25(e).
>
>    c. Whether a use presents a unique situation, and whether it requires a location in Wetlands, are determinations that may be made as administrative decisions under Sec. 82-25(d), or as planning commission decisions under Sec. 82-

---

[6] The application presented substantially the same proposed project.

25(f), based on the requirements pertinent to each of those sections.

11.    Pending action on the parish's writ application to the Louisiana Supreme Court, and out of respect for the Fifth Circuit's decision, the parish council has considered the Remand Application in accordance with that decision, while at the same time rejecting the rationale of that decision as being inconsistent with the parish's land use ordinance.

Plaintiffs argue the subsequent approval and issuance of the land use permit for Koch's project renders the writ applications moot. The Parish opposes the motion to dismiss, asserting the collateral consequences exception to the mootness doctrine is applicable.

It is well-settled that courts will not decide abstract, hypothetical or moot controversies or render advisory opinions with respect to such controversies. **Shepherd v. Schedler**, 15-1750, p. 13 (La. 1/27/16), 209 So.3d 752, 764. This court has explained that, as a general rule:

> [A]n issue is "moot" when a judgment or decree on that issue has been "deprived of practical significance" or "made abstract or purely academic." A case is "moot" when a rendered judgment or decree can serve no useful purpose and give no practical relief or effect. If the case is moot, then there is no subject matter on which the judgment of the court can operate. That is, jurisdiction, once established, may abate if the case is moot.

**Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance**, 98–0601, p. 8 (La. 10/20/98), 720 So.2d 1186, 1193 (internal citations and quotations omitted). However, exceptions to the mootness doctrine have been recognized.

In **Cat's Meow**, this court discussed the collateral consequences exception in the context of whether a curative amendment to a challenged article, statute, or ordinance will moot an attack on its former provisions:

> A second exception to the mootness doctrine, applicable when a challenged article, statute, or ordinance is amended or repealed, is the collateral consequences exception. Although this exception is most

often used to enable review of expired criminal sentences, it has frequently been applied in the civil context. Under this exception, the court must determine the nature of the relief sought by the parties in concluding whether or not a change in the law moots a case. Thus, if a plaintiff's petition sought solely prospective relief in the form of a declaratory judgment, then the change in the law may lead to dismissal of the case. However, if, in addition to prospective relief, claims for compensatory relief are made, then a change in the law may not moot the case. Therefore, although the primary subject of a dispute has become moot, the controversy is not moot if there are collateral consequences to one of the parties. The collateral consequences of the case or controversy give a party a concrete interest in the outcome of the litigation and ensure that the appeal is not moot.

**Cat's Meow**, 98-0601 at 12-13, 720 So.2d at 1196 (finding collateral consequences exception applied because plaintiffs sought compensatory relief, in addition to declaratory relief, based upon the former provisions of the challenged legislative ordinances); see also, **Ulrich v. Robinson**, 18-0534, pp. 12-13 (La. 3/26/19), 282 So.3d 180, 188-89 (finding collateral consequences exception did not apply where plaintiff solely sought declaratory relief that statute was unconstitutional, and a statutory amendment had cured the constitutional issue). This court has not explicitly defined the type or scope of collateral consequences necessary to trigger application of the collateral consequences exception, but it has not been limited to cases where a challenged law had been amended, or cases where a claim for monetary damages remain. For example, we have applied the collateral consequences exception in a security interest case where the sequestered property had been sold, finding that although the sale of the property rendered moot the issue of whether the writ of sequestration should be dissolved, the propriety of the sequestration could still be reviewed to determine whether there was any merit to the request for an award of damages. **First Nat. Bank of Picayune v. Pearl River Fabricators, Inc.**, 06-2195, p. 8 (La. 11/16/07), 971 So.2d 302, 308. Additionally, in **Watson v. Banguel**, the court of appeal declined to consider defendant's appeal of an order of protection

11

(stalking), finding it moot because the order of protection had expired. This court granted defendant's writ with a brief per curiam opinion applying the collateral consequences exception, noting entry of the protective order could have lasting effects on defendant's personal and professional life, and pointing out that if the order were overturned on appeal, defendant would have the right to an expungement. **Watson v. Banguel**, 21-01793, p. 1 (La. 2/8/22), 332 So.3d 632.[7]

After considering the particular facts of this case, we find sufficient collateral consequences exist to justify application of the exception. When considering whether an issue is moot, the underlying concern is whether a ruling by the court can serve a useful purpose and have a practical effect. See **Cat's Meow**, 98-0601 at 8, 720 So.2d at 1193. Although the original dispute regarding approval of Koch's application has been resolved, disputed issues remain regarding the Parish's power to interpret its own Plan in the course of making land use decisions, as well as the proper scope of judicial review of those decisions.

Furthermore, as will be discussed more fully below, jurisprudence related to judicial review of local governmental land use decisions has gone astray, leading to confusion and inconsistencies. Clarification is necessary. Moreover, because we ultimately find the court of appeal erred in its analysis, it is necessary to correct that error to prevent the court's decision from being used as precedent in other cases. Without correction, the Parish would be deprived of the constitutional authority to interpret its own land use plan, and would be bound to apply the court of appeal's

---

[7] See also **In re Interdiction of Raspanti**, 24-166, pp. 4-5 (La. App. 5 Cir. 12/4/24), 410 So.3d 282, 286-87, wherein the court of appeal declined to dismiss an appeal of an interdiction order as moot following the death of interdicted person. The court noted that although the interdiction abated upon her death, there were collateral consequences to a determination of whether her interdiction was full or limited while it was in effect (i.e., affecting which juridical acts the interdicted person lacked capacity to make while the order was in effect).

interpretation of the Plan, effectively necessitating Tier 3 review for all land use cases involving wetlands use.

Although the Council ultimately approved the resubmitted Koch application in line with provisions of the court of appeal opinion (applying Tier 3 review), these issues outlined above remain unresolved, indicated by the Council's expressed disagreement and rejection of the court of appeal's analysis and interpretation of the Plan, and the court's holding that Tier 3 review was necessary (as outlined in the Council's August 6, 2025 Resolution).

"[A]lthough it may become unnecessary or impossible to grant the primary relief originally sought in an action, remaining consequences of the litigation may prevent the case from becoming moot." **St. Charles Par. Sch. Bd. v. GAF Corp.**, 512 So.2d 1165, 1172 (La. 1987) (on reh'g) (discussing United States Supreme Court jurisprudence). For these reasons, and based on the particular facts of this case, we find the collateral consequences exception to the mootness doctrine is applicable. Plaintiffs' motion to dismiss is therefore denied.

**Merits**

The Louisiana Constitution specifically and expressly confers the power to regulate land use to local governments, such as St. James Parish. Article VI, §17[8] explicitly grants parishes and municipalities[9] not only the power to adopt land use regulations, but also the power to implement those regulations through the creation of commissions, and the power to review the land use decisions of any such commission:

---

[8] Similarly, Article XIV, § 29 of the 1921 Constitution empowered municipalities "to zone their territory, to create residential, commercial and industrial districts, and to prohibit the establishment of places of business in residential districts."

[9] La. Const. art. VI, § 44 defines "local governmental subdivision" to mean "any parish or municipality."

Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained.

This court has long recognized that land use regulation is derived from the police power of the governmental authority and is legislative in nature. See **Four State Realty Co., Inc. v. City of Baton Rouge**, 309 So.2d 659, 664-65 (La. 1974); **State ex rel. Civello v. City of New Orleans**, 97 So. 440, 443-44 (La. 1923).[10] The Parish exercised its police power relative to land use regulation through enactment of the Plan.

Because a land use decision is an exercise of the parish or municipality's legislative power and function, it is not subjected to the same standard of judicial review as a typical civil decision by a court or similar tribunal. Jurisprudence reflects that courts have historically afforded deference to local government land use decisions. In **Palermo Land Co. v. Plan. Comm'n of Calcasieu Par**., 561 So.2d 482 (La. 1990), this court considered a challenge to the decision of the Police Jury of Calcasieu Parish to rezone several tracts of land, thereby preventing expansion of an existing landfill. In finding the decision was a valid exercise of police power, this court explained in part:

Zoning is a legislative function. The authority to enact zoning regulations flows from the police power of the various governmental bodies. As the local governing body with final zoning authority, the Police Jury of Calcasieu Parish has the authority to amend, supplement, change, modify or repeal existing zoning ordinances.
. . . .

---

[10] Although these cases discuss municipal zoning regulations, they are equally applicable to other land use regulations which are an exercise of constitutionally conferred governmental police power.

A challenge to a zoning decision in Louisiana is a de novo proceeding in which **the issue is whether the result of the legislation is arbitrary and capricious**, and therefore a taking of property without due process of law. Whether an ordinance bears the requisite relationship to the health, safety and welfare of the public is a factual question which must be determined from the evidence in the record. If it appears appropriate and well founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld.

The differing needs of each parish, according to its size, population, level of industrial and commercial development, and the rapidity of growth of such development, will naturally result in different planning and zoning regulations in each parish. The need for change through rezoning or reclassification will depend on the same factors, thus rezoning decisions are properly left to those officials who are most familiar with the needs of each community. **Judicial review of zoning decisions acts merely as a check on this legislative power granted to parish officials to ensure that there is no abuse of the power. Courts will not and cannot substitute their judgment for that of the legislative authority.**

**Palermo Land Co.**, 561 So.2d at 491-92 (La. 1990) (emphasis added).

In **King v. Caddo Par. Comm'n**, this court recognized the "broad powers" to adopt regulations for land use, zoning and historic preservation and confirmed the arbitrary and capricious standard relative to review of land use decisions:

Because zoning falls under the jurisdiction of the legislature, courts will not interfere with their prerogative unless their action is palpably erroneous and without any substantial relation to the public health, safety or general welfare.

The terms "arbitrary and capricious action" when used in a manner like the instant one, must mean willful and unreasoning action, absent consideration and in disregard of the facts and circumstances of the case. On the other hand, when there is room for two opinions, action is not arbitrary or capricious when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached.

The test of whether a zoning board's action is arbitrary and capricious is whether the action is reasonable under the circumstances. **A reviewing court does not consider whether the district court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion**.

**King v. Caddo Par. Comm'n**, 97-1873, pp. 10, 14-15 (La. 10/20/98), 719 So.2d 410, 416-18 (emphasis added; internal citations and quotations omitted).

Likewise, in **Toups v. City of Shreveport**, this court reiterated these principles and further explained:

> The courts may not assume powers and functions which the law has lodged in other agencies of government relative to the adoption and administration of the zoning laws; in other words, a court may not constitute itself as a zoning commission, or 'super-zoning' commission, or zoning board. Courts have recognized it is not within the province of the appellate court to second guess a zoning decision that appears to have been based on appropriate and well-founded concerns for the public.

**Toups v. City of Shreveport**, 10-1559, p. 5 (La. 3/15/11), 60 So.3d 1215, 1218.

This standard of judicial review is not limited to zoning decisions. The same standard applies to other land use decisions by a governmental entity, as those decisions derive from the same constitutionally bestowed police power. See, e.g., **Glomax, LLC v. Lafayette Consol. Gov't**, 24-183, p. 7 (La. App. 3 Cir. 11/27/24), 403 So.3d 32, 37, writ denied, 24-01587 (La. 4/8/25), 405 So.3d 573; **Garber v. City of New Orleans Through City Plan. Comm'n**, 16-1298, pp. 4-6 (La. App. 4 Cir. 12/13/17), 234 So.3d 992, 996-97. Moreover, this standard of review is applicable regardless of whether a court is reviewing the validity of a zoning or land use regulation, or reviewing the governmental entity's decision after application of its regulation. See **Toups**, 10-1559 at 7-8, 60 So.3d at 1220. Enactment, implementation, decision making, and review are all powers constitutionally conferred to parishes and municipalities under Article VI, § 17.

The court of appeal's de novo review was inconsistent with the principles expressed in these cases. We recognize that in the process of discussing proper judicial review of municipal land use decisions, this court has previously stated that

a challenge to such a decision in Louisiana "is a de novo *proceeding*." <u>See</u> **Toups**, 10-1559 at 4, 60 So.3d at 1218 (emphasis added); **King**, 97-1873 at 15, 719 So.2d at 419 (emphasis added); **Palermo Land Co.**, 561 So.2d at 492 (emphasis added). But this should be distinguished from "de novo *review*" as that term is otherwise used to describe the role of appellate courts in resolving legal issues. There should be no de novo review in the context of judicial review of municipal land use decisions.[11] Thus, we reaffirm the arbitrary and capricious standard as discussed by this court in **Palermo Land Co.**, **King**, and **Toups** as the proper standard of judicial review of local governmental land use decisions.

A court's review in land use cases simply examines whether the governmental entity's administrative decision was made within the confines of the constitutional or statutory police power and whether the result of the decision was arbitrary or capricious. <u>See</u> **Palermo Land Co.**, 561 So.2d at 492. In **Palermo Land Co.**, the court emphasized that the role of judicial review is to ensure there is no abuse of the municipality's legislative power. *Id*. "When the propriety of a zoning decision is debatable, it will be upheld. It is only when an action of a zoning commission is found on judicial review to be palpably unreasonable, arbitrary, an abuse of discretion, or an unreasonable exercise of police power that such action will be disturbed." **City of Baton Rouge/Par. of E. Baton Rouge v. Myers**, 13-2011, p. 6 (La. 5/7/14), 145 So.3d 320, 327-28. The court of appeal was required to afford deference to the Parish's interpretation of the Plan and its substantive decision based on that interpretation. As long as the Parish did not exceed its constitutional authority

---

[11] Unfortunately, use of the "de novo" term has only resulted in confusion and misapplication of the proper standard of review in land use cases. This confusion is evidenced in the divergent analyses of the district court, court of appeal majority, and the dissent. Perhaps a better practice would be to omit the "de novo" term entirely when referring to the constitutionally imposed deferential standard of review in these judicial proceedings.

under Article VI, § 17 or other constitutional limit, abuse the discretion granted it, or fail to comply with due process requirements, the decision approving Koch's application should not be disturbed.[12]

The Parish, through the Commission, unanimously approved Koch's application, interpreting the "unique situation" language in Section 82-25(c) of the Plan to recognize that the ethane pipeline connection was an "allowable use" in the wetlands because the ethane pipeline to which it was connecting was already located in the wetlands. The Commission's decision was made after public notice, solicitation of public comments, and a public meeting. At the meeting, the Parish's land use counsel discussed application of the Plan to the Koch project and outlined the decision making criteria under the Plan. He specifically explained the circumstances that made the pipeline an allowable use under Section 82-25(c). The Commission determined that the pipeline connection to an existing pipeline in the wetlands was an allowable use that was appropriately considered under Section 82-25(f) (Tier 2 review) rather than Section 82-25(e) (Tier 3 review) of the Plan. Subsequently, the Council rejected plaintiffs' appeal, thereby upholding the Commission's decision and indicating its approval of the Commission's interpretation and application of the Plan. The Commission's interpretation and application of the Plan language was reasonable, and entitled to judicial deference.

Section 82-25(c) specifies the allowable uses for "wetlands" providing that "... wetland areas **should** remain unoccupied **except for** unique situations requiring a

---

[12] Further support for this more limited judicial review of land use decisions is found in the zoning statutes, which do not authorize de novo review of a local government's interpretation of its zoning ordinances. See La. R.S. 33:4721 (limiting judicial review of a municipality's zoning decisions to grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power granted by the statute, or the denial of the right of due process) and La. R.S. 33:4780.40 (same for parish zoning decisions).

location in the water ...." (Emphasis added.) The meaning of terminology in an ordinance, and its application to particular facts, involve tasks and decisions that are constitutionally delegated to the Parish. What constitutes a "unique situation" to satisfy an exception for wetlands uses, and whether the list of allowable uses specifically incorporated such a unique situation, are part of the Parish's decision making process. The text makes clear that development in the wetlands is not prohibited. The word "should" in this section of the Plan is correctly construed as permissive rather than mandatory. See **Louisiana Seafood Mgmt. Council v. Louisiana Wildlife & Fisheries Comm'n**, 97-1367, pp. 12-13 (La. 5/19/98), 715 So.2d 387, 394. Thus, the language "wetland areas should remain unoccupied" is aspirational, not regulatory. Moreover, the phrase "except for unique situations requiring a location in the water..." expressly allows for an exception to any general prohibition. A fair and reasonable reading of the Plan provides that "unique situations requiring a location in the water" are "allowable uses" under the Plan and therefore subject to Tier 2 level review. As properly noted by the dissenting judges in the court of appeal, "tapping into the existing ethane pipeline falls within the very definition of a unique situation, as the only logical way to physically approach the pipeline is through the wetland." **Alexander**, 24-557 at 1-2, 415 So.3d at 449.

The court of appeal did not find the Parish exceeded its constitutional authority under La. Const. art. VI, §17, nor did the court of appeal find the result of the Parish's decision arbitrary and capricious. Rather, under the pretense of finding that the Parish "failed to follow its own ordinance," the court performed a customary de novo review to engage in its own interpretation of the Plan. The court found that there was ambiguity in the language of the Plan regarding what could be considered a "unique situation" and thereby a potential "allowable use" in the wetlands. The court went

on to find that because "pipeline" was not specifically listed as an allowable use in the wetlands, it was necessarily prohibited unless approved using Tier 3 level scrutiny. By so holding, the court of appeal erred by failing to accord any discretion to the Parish's interpretation of the Plan and decision making, and substituting its own interpretation of the Plan language. The Parish did not fail to follow its Plan. The Parish interpreted and applied the language of the Plan to require Tier 2 review. Notably, it is the court of appeal's interpretation of the Plan language that conflicts with the explicit text. By requiring any proposed use in the wetlands be *specifically* named in Section 82-25(c) in order to be considered an allowable use, the court of appeal ignores and gives no effect to the language "unique situation requiring a location in the water." Such interpretation would necessarily prohibit *all* uses in the wetlands unless such use is subjected to extensive Tier 3 level review.[13]

## CONCLUSION

There has been no showing that the Parish's decision to classify the pipeline as an allowable use under the Plan, thereby triggering Tier 2 review to approve the application, was arbitrary and capricious. While one may disagree with or debate the Parish's interpretation of the Plan, it had a sound, rational basis and was therefore a legitimate and reasonable exercise of the discretion constitutionally vested in local authorities to make this land use decision. For the above reasons, the ruling of the court of appeal is vacated and the ruling of the district court is reinstated.

## DECREE

**VACATED AND RENDERED.**

---

[13] It is also noted that a zoning or other land use ordinance is in derogation of the rights of private ownership expressed in Article I, § 4(A) of the Louisiana Constitution. Thus, such an ordinance must be construed, when subject to more than one reasonable interpretation, according to the interpretation which allows the least restricted use of the property. **City of New Orleans v. Elms**, 566 So.2d 626, 632 (La. 1990).

# SUPREME COURT OF LOUISIANA

## No. 2025-C-00866

## c/w

## No. 2025-C-00868

## BEVERLY ALEXANDER; RISE ST. JAMES; INCLUSIVE LOUISIANA; AND MOUNT TRIUMPH BAPTIST CHURCH BY AND THROUGH THEIR MEMBERS

## VS.

## ST. JAMES PARISH

*On Writ of Certiorari to the Court of Appeal, Fifth Circuit, Parish of St. James*


**GUIDRY, J., dissents and assigns reasons.**

I disagree with the majority opinion. First, I would find this matter moot as the controversy between the parties became so when the Parish approved the land use application and the pipeline became operational. Because the controversy is no longer definite and concrete, touching the legal relations of parties having adverse legal interests, *see St. Charles Parish School Board . GAF Corporation,* 512 So.2d 1165, 1171 (La. 1987), I would grant the plaintiff's motion to dismiss.[1]

This case is moot. When and if a justiciable case and controversy presents itself in the future that would afford us subject matter jurisdiction, then and only then should we address any unresolved disputed issues regarding the Parish's power to interpret its plan of government in the course of making land use decisions.

On the merits, I would affirm the court of appeal. While Section 82-25(c) provides "for information only" that "wetland areas should remain unoccupied except for unique situations requiring a location in the water," Section 82-25(e)

---

[1] If the case is moot there is no subject matter on which the judgment of the court can operate. *St. Charles Parish School Board v. GAF Corporation,* 512 So.2d 1165, 1171 (La. 1987).

provides that *uses not specifically listed* as allowable under 82-25(c) are prohibited unless the use is considered in accordance with Tier 3 review. For context here, and as an example, under Section 82-25(c) and the land use category of "recreation," the following "allowable uses" are specifically listed: parks, playgrounds, athletic fields, golf courses, open spaces, natural areas, and wildlife. Under the category of "commercial," allowable uses include retail outlets, grocery stores, restaurants, lodging, service businesses, and offices, to name a few.[2]

The majority fails to recognize that Koch did not submit a land use application for a "unique situation." Rather, Koch submitted its application for the installation and *use of a pipeline*—a use not specifically listed as allowable in the wetlands, and therefore, subject to Tier 3 review.

This is not a matter of disagreeing with the Parish's land use decision, for which the Parish is entitled to deference. To the contrary, where Section 82-25(e) imposes additional procedure on the Parish for the evaluation of land use and in making its recommendation regarding that use, the Parish acts arbitrarily and unreasonably when it abandons its procedure.

The Parish's reading of its ordinance is neither reasonable nor fair; it is the role of the court to say so. The Parish acts outside of the confines of its power when it fails to follow its own ordinance. I therefore dissent.

---

[2] Section 82-25(c) further provides:

> These category descriptions are not intended to be a comprehensive prescriptive list of all possible land uses, but shall be interpreted to control the general character and impacts of development so that the physical development within each use area is compatible with and beneficial to other uses within the same area.